Chief Justice Robertson
delivered the Opinion of the Court.
Samuel D. Scott and Robert Q. Scott, having jointly bought from one Forman a tract of land, made a division of it in severalty between themselves, on the day of the contract of purchase, and each gave his separate bonds, for his portion of the consideration, according to their division, with the other and Alexander C. Scott as his sureties.
Afterwards, most of the purchase money having been paid, Forman conveyed to Samuel D. Scott a legal title to the whole, except about thirty two acres, of his allotted portion of the land; and S. D. Scott sold the whole thereof to one Liter, who sold a part, including the thirty two acres, to one Kleiser, who gave his bonds for the price thereof to S. D. Scott, in lieu of Liter’s liability. S. D. Scott having assigned those .bonds to different persons, both he and R. C. Scott died, intestate, leaving still unpaid about one thousand eight hundred dollars of the amount of the bonds given for S. D. Scott’s part of the land.
A tract of land was sold three 'times in succession, the first vendor withholding-the deed, & retaining a lien, as well as a bond with two sureties, for the purchase money. In this state of case, one of the sureties advised a purchaser to buy the land, but gave him no intimation of the lien. Tho’ this advice and concealment might estop that surety from asserting any equity, for his own benefit, to the prejudice of the party who purchased by his advice, it can have no effect upon-the rights of the first vendor, nor upon those of-the other surety; —and, the purchase money remaining unpaid, upon each successive sale, the - land may be sold by virtue of the first lien,to which the two sureties,. who had paid the debt, were substituted.
*138 To .secure indemnity against their liability for the said unpaid balance, the administrators and heir's of R. C. Scott filed a bill in chancery against the personal representatives of S..D. Scott and against Forman, Liter and Kleiser, alleging, among other things, that S. D. Scott died hopelessly insolvent, and that Liter and Kleff ser still owed for the land more than the amount of the balance unpaid therefor by S. D. Scott; and therefore praying to be substituted to the equitable lien asserted for Forman, and to have a decree enforcing that lien by a sale of the land.
Afterwards, an amended bill was filed, proposing to make Alexander C. Scott a co-complainant; and thereupon an entry was made on the order book, agreeing that he should be admitted to be a co-complainant, just as if he had been so in form in ■ the original bill. And another amendment having been filed, alleging that the administrators of R. C. Scott had, since the filing of the original bill, paid one moiety, and that A. O. Scott had paid the other moiety of the debt for which said Scotts were sureties to Forman for S. D. Scott — Forman and Liter and Kleiser answered-^ — the first admitting, in substance, the allegations of the bill and amended bills; and the two latter admitting but little, and insisting that R. C. Scott had urged Liter to buy the land from S. D. Scott, and therefore should be estopped to assert any equitable lien thereon, by substitution or otherwise.
The Circuit Court having decreed the subjection of the thirty two acres to sale, for the indemnity of th'e complainants — this writ of error is prosecuted to reverse that decree.
The first objection which has been urged against the decree, is that A. C. Scott and the representatives of R. C. Scott cannot maintain a joint suit in chancery.
But this we consider untenable; because, as between ■themselves and S. D. Scott, both R. C. Scott and A. C. Scott were his sureties; and, being co-sureties, they have a right to maintain a joint bill for enforcing their equities arising from that relation.
The plaintiffs next insist that Forman had no equitable lien, because, as they argue, he had waived it by *139 ■ taking personal security: in answer to which, it is only necessary to suggest that, though there may have been such an implied waiver so far as Foi’man had conveyed the legal title, nevertheless, holding, as he did, the title to the thirty two acres, he could not have been compelled to convey that title, without receiving the whole consideration, and might have maintained a suit in equity for subjecting the thirty two acres to the satisfaction thereof. That equity being transferable, and the plaintiffs having made the payment .during the pendency of their bill claiming the benefit of an equitable substitution, we must infer that it was understood and intended, at the time of payment, that they should be substituted. And Forman’s equity being prior to that of either Liter or Kleiser, the good faith with which they bought the land and acquired a covenant for a title, cannot be material, and the more especially as they have nether procured the legal title, nor paid the price agreed to be given. And in this view of the case, we dispose of more objections to the decree than that last stated. .
In such case, the notes for the last purchases having passed into the hands of strangers, as assignees, they were-necessary parties. So were the representatives of deceased obligors in the - first bond.
The objection most earnestly urged, however, is that the equitable right to substitution was waived by the conduct of R. C. Scott, in urging Liter to buy the land, without disclosing to him an intention to assert, in any event, any sort of claim to it, resulting from facts or rights then existing, and without notifying him of even the existence of any such facts or contingent claim.
But if, upon any existing or hypothetical state of case, R. C. Scott’s conduct should be deemed a waiver of his right to be substituted to Forman's equity, which, in the hands of Forman, remained nevertheless unaffected, or should be considered as amounting to an equitable estoppel against the enforcement of that-lien for his own, benefit, and not for that of Forman, still A. C. Scott’s-equity would remain unaffected, and the effect would be, only that R. C. Scott could not enforce the lien to-the prejudice of Liter, or of any person holding under him." And, as Kleiser holds only an equitable interest in the thirty two acres, and has not paid the consideration, he cannot be prejudiced by an application of the money to the extinguishment of Forman’s lien. As,. *140 such an appropriation of it by a decree of court, would extinguish his obligation and exonerate him from so much of the debt which he owes for the land, it cannot be material to him whether the payment be thus made under the authority of a decree, or be made to the holders of his bonds.
But, as the assignees of those bonds will be evidently affected by the enforcement of Forman’s equity, they should be made parties, so that they may be able to contest a claim which may essentially affect their interests. And therefore the decree is erroneous, because they were not made parties.
S. D. Scott’s representatives are also necessary parties; because, possibly, they might be able to show that he or themselves had paid the debt, directly or indirectly, to Forman, or that A. C. Scott and R. C. Scott had paid nothing, or not the whole amount; and if his assignees should be prejudiced by a decree, his estate would be responsible.
There is no satisfactory proof of the insolvency of his estate; and his representatives have not been made parties.
Wherefore, the decree must be reversed, and the cause remanded for such further proceedings and deeree as shall be proper.