WILLIAM C. STAPLES *v.* HENRY FOX, Admr.

1. SUBROGATION — GENERAL PRINCIPLE. —Whenever a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection, good conscience dictates that he shall have all the rights which the holder of the equity had.

2. SAME — CASE IN POINT. — A sheriff, who, induced by the defendant in an execution in his hands, fails to levy and make the money and return the execution according to its command, and, to avoid threatened legal proceedings against himself and sureties, pays the judgment, is in equity entitled to be substituted to all the rights of the judgment creditor, and to have the benefit of any security he had to the judgment debt.

3. STATUTE CONSTRUED — ART. 121, P. 123, REV. CODE, 1857.—A sheriff is entitled to the benefit of art. 121, p. 123, Rev. Code, 1857, only when he brings himself strictly within the terms, by payment of a judgment recovered on a motion for failure to return an execution.

ERROR to chancery court of Choctaw county. COTHRAN, J.

The facts set forth in the bill are these : In 1859, the executors of Jesse Hughes sold the real estate of the testator, to one Gore, for $2,600, under proceedings which, as it appears, warranted a sale on credit. For this sum Gore gave his two notes to the executors, for $1,319 50 each, payable January 1, 1860, and January 1, 1861, with Ford and

McComb as sureties. The sale created the statute mortgage for the purchase-money. In March, 1860, Gore and his sureties confessed judgment on the note falling due in 1860, and in 1861 suit was brought by the executors on the remaining note, which suit terminated in a judgment, in March, 1867. The larger portion of the judgment of 1860 was paid, leaving a balance of $876 81 due. Execution was issued on this judgment, and came to the hands of the complainant, Staples, who was sheriff at the time. Deceived by the promises of Gore, the defendant, Staples, the sheriff, failed to make the money, and failed to return the execution on the return day. "Whereupon the plaintiffs in execution and their attorney, discovering that your orator had laid himself liable for the amount of said execution, threatened and were about to make a motion against him and his sureties on his official bond, for the amount of the same, and to prevent said motion and to save his sureties from trouble on his account, as well as for the accommodation of the plaintiffs, he, on the 25th of March, 1861, paid to them the said sum of $876 50."

This is the language of the bill. It further states, that the breaking out of the war, the passage of the stay law, and the death of the executors of Hughes, occasioned the delay in enforcing this judgment for the benefit of the complainant, who, by the payment aforesaid, became entitled to the same, with all its securities and incidents.

The bill further states, that Fox, the administrator of Hughes with the will annexed, has obtained a decree foreclosing the statute mortgage on the land sold as aforesaid, and directing a sale for the satisfaction of the judgment rendered in March, 1868. That of these proceedings the complainant had no notice. That Gore and McComb and Ford, his sureties and co-defendants in the judgments, are insolvents, and that, by the sale under the decree aforesaid, not only the lien of complainant's judgment on the lands will be defeated, but his lien by virtue of the statute mortgage.

The bill prays for an injunction of the sale and for relief,

by giving him prior satisfaction out of the proceeds of the sale, or a pro rata share of said proceeds. Lindsey and Nolan are mere nominal parties, the one as sheriff and the other as commissioner to sell the lands.

The grounds of the demurrer were: 1st. No equity on the face of the bill; 2d. The judgment claimed by plaintiff is satisfied by the voluntary payment; 3d. There was no judgment or motion against the sheriff; 4th. Remedy now embarrassed at law; 5th. The defendants in the judgment are not alleged to have been insolvent at the time of the payment.

*W. F. Brantley*, for plaintiff in error.

1st. The cases of Rollins v. Thompson, 13 Smedes & Marsh. 525, and Morris v. Lake, 9 ib. 525, relied on by defendant in error, are not authorities in this case; because in those cases the liability of the sheriff had not been fixed by his failure to return the execution, and the court holds in those cases that a payment by the sheriff is but the payment of a stranger not bound to pay. In the case submitted, the sheriff's liability is fixed by his failure to return the execution, and he pays only after his liability is thus fixed, and to save himself the expense of a motion; and to hold that a payment under such circumstances does not entitle him to the benefit of the execution, is to decide that he is bound to incur the expenses of a suit, and to litigate, although he may know that his liability is fixed, and no good can come to him by the litigation. Is this the meaning of the statute?

2d. Rev. Code, p. 123, art. 121, intends to give the sheriff the benefit of the execution, when his liability is fixed, and he pays such liability, without regard to technicalities; and his liability is fixed when he fails to return the execution. Now, when he fails to return the execution, the plaintiff "has a right to have his judgment against him." This is the language of the statute; and is it so, that, when he has thus failed to return the execution, he is bound nevertheless to litigate and defend the motion and incur the expenses of

such motion, and the damages incident to such a proceeding, when he knows that the plaintiff shall have his judgment against him, and when his liability is already fixed by the statute? We submit that what the sheriff would be com pelled to do by a motion, he may do voluntarily.

3d. A surety is one bound in the event of the default of another. Staples, the complainant in this case, became bound for the debt or judgment because Gore failed to pay it, and, being so bound, he paid the judgment. Is he not entitled to be substituted to the rights of the plaintiff in the judgment? In cases where the person paying the debt stands in the situation of a surety, or is compelled to pay in order to protect his own interest, a court of equity will substitute him to the place of the creditor, as a matter of course, without any special agreement. See 1 Lead. Case in Eq. 113.

4th. There is nothing in the point that complainant's remedy is in a court of law, for this is a proceeding upon the part of an administrator to enforce a statutory mortgage, which can only be properly done in a court of equity.

*Harris & Withers*, on the same side.

The statute gives the title and ownership of the judgment to the sheriff in the case mentioned in the Code, p. 123, art. 121. The sheriff becomes the creditor; the judgment debt his property; the right of property in the debt unquestionably carries with it the incidents, the judgment lien, the statute mortgage. The fact that the statute has given the privilege of collecting the debt by execution, clearly does not carry the idea that the title to the money can in no other way be enforced. The statute gives to all parties who own judgments or who have obtained judgments, the right to execution, yet, because the law allows a party to enforce the judgment by the writ of *fieri facias* we are not to assume that he may not enforce it in any other way. The administrator of Hughes had the right to sue out execution on the judgment of 1867; yet it is plain he is not limited to

that remedy, but had the right to foreclose the mortgage. The right of property in the debt being once secured, under the statute, all the incidents of property rights follow. The judgment debtor is the debtor of the sheriff, and all the remedies which other creditors have belong to him.

The death of the debtor, his bankruptcy or insolvency, or any event which rendered the process of execution no longer available, would not deprive the sheriff of his remedy for a share of the assets, or of his equitable remedy against property not accessible to legal process. The statute first gives title to the debt, and then authorizes execution, but clearly did not intend to confine the sheriff to execution, and expose him to all the contingencies, which render legal process by *fieri facias* unavailable. Such a construction would be unreasonable and absurd.

The mere failure to return the execution on the return day would not justify the exhorbitant penalty attached to it but for the provision which substitutes the sheriff to the rights of the creditor, and a statute intended to confer a substantial right and clearly did not aim to fetter or impair it by authorizing execution for the sheriff's benefit. Therefore, it is no objection to this bill that, if the sheriff acquired title to the judgment, he has the right to issue execution. The proceedings of the defendant Fox are, as the bill states, such, that if allowed to continue, will render the remedy by execution abortive, for the mortgage lien is older than the judgment. It will not be disputed, that in this case, on an execution for the sheriff's benefit, the debt being for unpaid purchase-money of the land in controversy, the judgment debtor could not claim the homestead exemption, nor that the judgment lien, acquired by enrollment, would inure to his benefit. He succeeds to all the rights of the original creditor, which spring from the character of the debt, and this gives him a title to the statutory lien. This principle of substitution being admitted must be followed out to its legitimate consequences. The system of equity, which we have, the most splendid and durable movement

of which the legal profession can boast, is characterized by two traits ; it looks at the substance, disregarding forms, and pursues its principles to all their legitimate consequences. The infinite flexibility of its remedies surmount all obstacles. The right being clear, it draws to its support every known remedy in law and equity. Indeed, the vast development of the system of equity, under the administration of enlightened judges, is nothing more nor less than the result of the doctrine, that a sound and just principle is to be followed and applied to every conceivable state of facts.

The principle of substitution, or as it is sometimes called subrogation, is an illustration peculiarly applicable here. A surety, paying the debt of his principal, has his legal remedy by action of *assumpsit* at law. The court of chancery held this remedy inadequate. He becomes, by the payment, the creditor of the debtor, and the court of chancery held, that the original creditor being paid ought to yield to the surety all the rights which he had, all the securities and liens, and the debtor had no right to complain. The principle was carried further and was made to apply to all persons and funds secondarily liable. The heir, paying a debt of the ancestor, is substituted to the right of the creditor against the personal assets. A subsequent incumbrancer, paying off the prior incumbrances, acquires the rights of prior incumbrancer ; the marshaling of assets, a most beneficent doctrine, is but the extension of the principle of substitution. See 2 Story's Eq. (new ed.) 542, 543.

The statute has declared that the judgment "shall vest in the sheriff," this makes him the owner of the debt. It is substitution, and surely it is complete substitution. The effect of the law (art. 121) is to make the defaulting sheriff and his sureties liable to the creditor. The creditor has recourse upon all — the debtor and sheriff. As between the sheriff and sureties and the judgment debtor, the latter is primarily liable. This is not only the actual relation as it results from the law, but it is the relation which the law assumes to exist, and applies the doctrine or principle of

substitution to it, as between the sheriff, with his liability, fixed by a default in returning process, and the judgment debtor, whose obligation to pay is the same as it was when he contracted the debt.   Is the debtor not first bound to pay ? If he is not, then there would be no ground to hold him liable to the sheriff.   The heir inheriting lands may be bound by the bond of his ancestor.   He is in no sense the surety of the ancestor.   By law, however, the personal estate is the primary fund to pay debts.   The heir, however, had no remedy provided by law to compel the creditor to go upon the personal estate, nor could he at law compel the legal representative to pay the debt ; yet, because the heir's liability was secondary to the personalty, he occupied substantially the position of a surety and in principle was entitled to be substituted and re-imbursed.   Shall we say that the principle shall not be applied here because the right resulted from the statute and not from the unwritten law ?

Clearly, the court of chancery, finding that the sheriff has become secondarily liable, as between him and the debtor, and has acquired title to the debt by payment, would give him all the remedies to which any other party would, in the same situation, be entitled.   He becomes equitably entitled to the statute mortgage as he does to the judgment lien and the privileges against the homestead exemption.   Why the one and not the other ?   The " privilege " results from the character of the debt and so does the statute mortgage. The discussion so far leads us now to consider the distinction between the case of a voluntary payment by a sheriff and a payment by him after a default made.   The distinction is fundamental and of the utmost importance in measuring the force of the decisions of this court, which opposing counsel have cited.   It is precisely the distinction between the case of a surety who pays after default made by the principal, and that of a payment by a third party not bound by the contract.   The payment by the surety, though without suit, entitles him to substitution, it is not a

voluntary payment and the law does not presume that he pays to discharge the principal. A sheriff paying without a default by him, pays without being bound to pay and without any legal liability to pay, and his payment is like that of a third party paying a debt for which he is in no way bound. The law presumes he pays it for the debtor, and *prima facie*, it is a satisfaction.

In all cases, however, where the party paying is legally bound to the creditor as surety, or in consequence of a legal liability in its notice secondary as to the principal debtor, a different principle or a different rule prevails. In such case, it is presumed he pays for himself, being bound to pay.

All the cases relied on, that in 13 Smedes & Marsh. 525, and 9 ib. 525, are cases in which, so far as the facts appear, no default had occurred, and consequently no legal liability to pay existed. The proposition that the payment of a debt by a party not bound to pay it confers no right upon him, without an express contract to that effect, is not new. The cases cited go no further than this. In this case the sheriff had become legally bound to pay. The statute first declares that such a default entitles the plaintiff to demand and recover the amount on the sheriff's bond. The sheriff and his sureties are bound to pay, as a surety or joint-debtor is bound, and a payment by him is subject to no presumption which does not attach to a payment by them. The demurrer admits the statements of the bill to be taken as absolutely true. We are therefore to assume that a default had been made, and that a motion to recover the amount of the judgment and damages at five per cent on it was about to be made. The liability was fixed. He and his sureties might have been sued on the bond in the ordinary way for damages, for there was a breach. The right of the plaintiff to make the motion is admitted. It must be admitted that a judgment on the motion in his favor was inevitable, according to the due course of law. The payment was, therefore, compulsory, as in the case of a surety.

The question which now arises is this: was the sheriff bound to wait for the motion, and incur the expense of the suit and the damages? The damages assessed are the penalty, the punishment. These he could not recover from the defendant in execution. Could he not do without suit what the law would compel him to do? Is he the only person who must submit to be sued, and shall he be compelled to defend what is indefensible, or forfeit his rights? May he not pay after notice of the motion is served upon him? It is, at last, the payment which vests title to the judgment in the sheriff. It is not the judgment against him which confers the title.

What is the substance of the thing? The plaintiff in execution has, by the sheriff's default, acquired the right to enforce payment of the judgment out of the sheriff. If the sheriff pays the amount what is it that he pays? He pays the amount of the plaintiff's judgment. That this is so is manifest from the fact that the plaintiff can no longer enforce the judgment against the debtor. Will it be contended that nothing short of submitting to a judgment and paying that will satisfy the statute? The plaintiff gets his debt out of the sheriff, and is not the payment of the judgment against the sheriff in substance and effect paying the plaintiff's debt?

It is one and the same thing. The plaintiff can waive damages even after judgment. The sheriff's title would be good although he paid only the amount of the judgment. If the plaintiff chose to remit the damages, the spirit of the law does not require that a judgment shall be rendered against the sheriff before he can acquire a title on payment. It is sufficient that his liability is fixed by the default. It is susceptible of exact proof, and no body can possibly be injured and the policy of the law infringed by payment after default and before judgment. The debtor, who is still bound on the judgment, cannot be injured. The creditor's rights are secured. and the sheriff's default is answered as the law intended.

The art. 121, in authorizing a motion and judgment, was providing a remedy for the plaintiff. They are the means of compelling the payment of his debt. It is not this motion and judgment which gives the sheriff a title, but the payment of what he is compelled to pay. His title is as clearly good, if he confessed judgment, as it would be if he resisted unsuccessfully. The liability of the debtor is already fixed, and the default gives the right of action to the plaintiff. Judgment is only important to the plaintiff as a means of compelling payment. The sheriff's sureties are released by the payment, and therefore have no claim to insist that a judgment shall first establish the sheriff's liability. The sheriff alone is concerned, and to hold that he cannot, without the sacrifice of an important right, refuse to resist what cannot be resisted, is a positive absurdity.

The court or judge that can draw a distinction between paying the judgment against the sheriff, which is for the amount of the original judgment, and the payment of the original judgment, and in a proceeding in equity apply it to defeat a right, would have hanged the surgeon who bled the fainting man in the streets of Bologna.

The sheriff is accused of delay. How does the administrator account for the delay of six years in prosecuting his suit on the last note? Is he not chargeable with the same negligence? It is idle to urge upon the court that the sheriff obtained his right through his own default. He obtained it by paying the debt. He answered his default as the law held him answerable. His title is conferred by law, and no personal demerit can affect his position in a court of equity. A court of chancery may denounce usury, yet who ever heard of its refusal to foreclose a mortgage because the money loaned had been acquired by usurious exactions from the needy? It is sufficient, if the party has a title recognized by law, and acquired as the law provides.

*Walthall & Golladay*, for defendant in error.

1st. The judgment which complainant is seeking to get

the benefit of, has been discharged by a payment which he made while sheriff. It is well settled that if one, not a party to an execution, pay it without an agreement that it is not to operate as a discharge, or without taking an assignment, the execution will be satisfied. See Morris v. Lake, 9 Smedes & Marsh. 525, and authorities there cited ; see, also, 5 Hill, 566, and Allen on Sheriffs, 145, 146. It has been twice held in this state that this rule has not been waived with respect to sheriffs, by a statute which vests in the sheriff the execution, the amount of which he has been compelled to pay on a failure to make a due return of it. Morris v. Lake, *supra ;* Rollins v. Thompson, 13 Smedes & Marsh. 525. The act construed in these cases (Hutch. Code, 448) and the present law (Rev. Code, 122, art. 123) are the same, except that the present law includes within its benefits the sureties of a sheriff who may pay off a judgment on motion against him and them, and the old law did not. The case which complainant makes for himself does not bring him within the provisions of the statute under consideration. The court will not " extend the statute beyond its close construction. To do so would tend to encourage negligence in the performance of official duty, by an assurance that, after his laches and delay, the sheriff might pay and then enforce the execution." Morris v. Lake, 9 Smedes & Marsh. 526 ; Dillon v. Cooke, 5 ib. 780.

2d. Nor can complainant get the benefit of the doctrine of substitution on the facts set out in his bill. "It is only in those cases where the person advancing money to pay the debt of a third person stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in place of the creditor, as a matter of course, without any agreement to that effect. In all other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. Sanford v. McLean, 3 Paige's Ch. 116–122 ; Banta

STAPLES. *v.* FOX. [Sup. Ct.

Argument for defendant in error.

v. Garno et al., 1 Sanf. 385 ; Bank of U. S. v. Winston's Exrs., 2 Brok. 252–254 ; Douglass v. Togg, 8 Leigh, 588, 602 ; Adams' Eq. 610, and note.

In the case of Griffing v. Pintard, 25 Miss. 173, 177, this court refused to extend the doctrine of substitution to a case where a tax collector sold land to re-imburse himself for money which he had advanced to pay the taxes on it. In principle, what difference is there between that case and this ?  In neither case was the party paying in the situation of a security, nor did he pay to protect his own rights. The bill states that Gore, Ford and McCombs are insolvent. It does not allege that they were so when complainant paid off the execution.  It is clear that they then were solvent or Staples would not have advanced the money on the execution, but would have returned it *nulla bona.*  In that view the creditor, if this bill is held good, must lose his debt by the sheriff's default in failing to collect, as was his duty under the law, when the defendants in execution were coercible.  Now they are no longer so, and the delinquent sheriff seeks to impose on the creditor the loss arising from his own neglect of official duty.  The privilege of substitution, it is said, "is based exclusively on principles of natural justice."  23 Miss. 182 ; 31 ib. 638.  Should the prayer of this bill be granted, the rankest injustice will be worked to a diligent creditor, by the default of a public officer, and a court of equity will aid that officer in accomplishing indirectly that which cannot be done in a court of law, "because it would tend to encourage negligence in the performance of official duty."

3d. If complainant has any rights at all in the premises, they arise under the statute, Rev. Code, p. 123, art. 121, then his remedy is clear and unembarrassed at law.  The bill shows that Fox is administrator *de bonis non,* with the will annexed of Hughes, and complainant, by having the judgment revived in his name, could take out the execution in the name of Fox, administrator, etc., for his own use, if he had the right to enforce payment at all.  If

the judgment is not satisfied by the payment made, there is nothing in the way of its being enforced at law, and there is no pretext for equitable interference.

SIMRALL, J. :

In 1859 the executors of Jesse Hughes, deceased, sold the parcel of land described in the bill, on a credit, to E. F. Gore, for which Gore gave his two promissory notes, with Thomas B. Ford and William McCombs as sureties, maturing respectively 1st January, 1860 and 1861. Judgment has been recovered on both notes.

The complainant, W. C. Staples, was in 1861 sheriff of Choctaw county, and as such, received an execution issued on the first judgment, and as averred in the bill, by putting confidence in the principal debtor, Gore, he failed to make the money, and to return the execution according to law. The attorney for the creditor discovering his liability, was about to move against him and his sureties. In order to prevent the motion and to save his sureties from annoyance, and protect him and them from the statutory damages, he did, on the 25th March, 1861, pay to the judgment creditor or his attorney $871 81, the balance due on the judgment ; by reason whereof the complainant claims that he ought to be the equitable owner of the judgment, with its liens and securities, that he ought to have the benefit of the statutory mortgage, resulting from the sale of the decedent's land, and inasmuch as the administrator, etc., with the will annexed, had obtained a decree of foreclosure, the money to arise from the sale should be appropriated to pay him the $871 81 and interest. On demurrer the bill was dismissed.

It will be perceived that these facts do not fall within the literal terms of art. 121, p. 123 of the Revised Code, the article only covering the case of the payment of a judgment recovered on a motion for failure, to return the execution, in which event " the original judgment and execution vests in the sheriff for his benefit, and execution shall issue

for his use, and at his costs." The payment of the recovery on the motion is the fact which, by operation of law, fixes in the sheriff the right to the original judgment and a process thereon as usee.

The foundation of the sheriff's equity, if he have any, is the principle of subrogation. Dixon, in his treatise on the subject, says, that it is the "substitution of another person in the place of the creditor in relation to the debt." It differs from an assignment, in the circumstance that it does not necessarily depend on the act of the creditor, but may be, and perhaps generally is, independent of him. So it may be of the debtor. In many instances it takes effect by operation of law. Sometimes it is denominated a fictitious cession, made to one who has a right to offer, or make payment to the creditor. Thus, in Craft v. Moore, 9 Watt, 451, a surety who had paid the debt, and sought substitution to the rights of the creditor, was treated as a fictitious assignee. In Letterdate v. Robinson, 12 Wheat. 594, it was declared to be a well-settled rule of equity, to compel a creditor, who had been paid by a surety, to assign the cause of action to him, and thereby invest him with an actual substitution; and, as stated by the court, it would be going but one step further to consider that as done which he has a right to have done in his favor. Equity makes a full investiture of all the securities with which the creditor was provided, as where the principal had executed a mortgage to his creditor, who obtained a judgment at law, which the surety paid, such payment will not, in equity, have the effect of extinguishing the original debt, so as to preclude the surety from claiming the benefit of the mortgage by way of indemnity. Norton v. Soule, 2 Greenl. 341. The right to mortgage or other express securities rests upon no higher ground than a similar right to equitable liens, therefore there may be substitution to the vendor's lien. Klisen v. Scott, 6 Dana, 137; Bank v. Chrisman, 3 B. Monr. 50. The general proposition is, that before the right accrues there must be the discharge of legal obligation for another,

who is under a primary obligation, for no man can make another his debtor without his consent. The principle, in its application, is very broad, so that it were difficult to proscribe its limits. Generally, the person who discharges the debt by payment must be under a legal obligation to do so. This, however, is not comprehensive enough to include all the cases that have gone into judgment. If a subsequent incumbrancer or purchaser from the vendee discharges the vendor's lien, either shall be substituted to all the privileges and priorities of the vendor. 2 Story's Eq. Jur., § 1227. Strictly, it cannot be said that either is bound to pay off the lien, but they are in such relation that it may be necessary to do so in order to protect their security or title. Whenever, therefore, parties have such interests in property as make it incumbent on them to get in an outstanding claim in equity for its protection, good conscience would dictate that they should have all the rights which the holder of the equity had.

The averment of the bill is to the effect that the complainant was disappointed in the confidence he put in the word of the debtor Gore, which involved him and his sureties in responsibility for the judgment. It is fair to presume that Gore was aware of the risk incurred by the sheriff for a failure to return the execution. If that risk was induced to be assumed by his procurement and assurances, it would seem that there must be some consideration of policy, or rule of law in the way, to shield the debtor from the relief sought in this suit.

The parties stand thus : the creditor has been satisfied his debt ; the debtor has been exonerated without parting with any thing. It was at his instance that the indulgence was granted, and thereby the burden of the debt imposed on the sheriff. After placing the sheriff in that attitude, is it straining the truth too far to say that the money was paid at his request, and by one under a legal duty to the creditor? After the liability of the sheriff has been fixed, by the fact of his failure to return the writ, to require him to wait until

compelled by judicial means to pay, would encourage a repetition of a non-performance of duty. .We do not mean that the sheriff may voluntarily advance his money (when not liable for the judgment) and claim substitution. But if he fails to levy and make the money, on the inducement of the debtor, and to avoid legal proceedings threatened against .him and his sureties, pays the debt, then his equity is as .strong as if he had withheld the money until condemned by a judgment on a motion against him. Nor does this work the slightest injustice to the judgment debtor. The point under consideration has never, so far as we are aware, been decided in this state. In Morris v. Lake, 9 Smedes & Marsh. 521, the facts were that Humer, administrator of Estes, recovered a judgment against Morris and Lake, levy was made on Lake's property, who superseded on the ground that the sheriff had either voluntarily, or at the instance of Munn, paid the creditor. In Robbins v. Thompson, 13 Smedes & Marsh. 525, the parties are not given. In Harrison v. Harrison, 1 Litt. 145, it was held that the sheriff may show that the debt ought not to be collected. Say the court: ".It would seem against conscience to permit a plaintiff to recover from a sheriff the amount of his claim, where the sheriff had not received the money, but had barely become liable by some malfeasance in office, where, in equity and conscience, the plaintiff is not entitled to a cent from his principal." In Dillon v. Cook, 5 Smedes & Marsh. 780, .the sureties paid the money on motion against the sheriff themselves. . They .were not allowed to sue out execution .for their use, because not embraced in the statute as it then stood. But, said the chief justice, "They are not without remedy. Besides their right of action, the administrator of the sheriff (who had deceased) would be entitled to pursue the execution." The statute, at that time, in words gave the sureties no right to the judgment and execution; it was confined to the sheriff. Yet, so impressive and urgent was the claim of the sureties, that it was announced that they might, through the administrator of the sheriff, pursue exe-

cution for their re-imbursement. They would not do this in their own names, but they might through the right of the sheriff. What is the "right of action" meant by the court? Certainly against the judgment debtor, whose debt has been satisfied with their money.

It is clear that the sheriff in this case has no right to pursue the execution ; that privilege is conferred in the single case of his paying the recovery on the motion. The principle was laid down in Miller v. Weedate, Noy. 107 ; Reed v. Preyon & Slatts, 7 Johns. 426 ; Sherman v. Boyce, 15 ib. 445, that, if the sheriff satisfy the debt out of his own money, he cannot afterward detain the goods on *fieri facias* for his own indemnity, but that the judgment is satisfied. When the money is advanced, at the instance of the debtor, the sheriff is turned over to his original action against him ; while in this case the sheriff cannot use execution on the judgment, because not within the terms of the statutory remedy, yet, in the circumstances, he should be allowed a redress. Having paid a debt, which was protected by a security, wholly separate from the judgment, paid because he had incurred a legal responsibility, his equity would be to have that security turned over to him for his indemnity.

Wherefore, we reverse the decree of the chancellor, and enter judgment here, overruling the demurrer, with leave to defendants to plead or answer within sixty days from this date.