MARY A. GOOD v. R. T. GOLDEN ET AL.

SUBROGATION. *Cannot be claimed by one who merely pays part of a secured debt.*

One who, at the request of the debtor, discharges part of a debt, for the security of which the creditor held a deed of trust on the lands of the debtor, is not, in the absence of any agreement to that effect, either express or reasonably inferable from the facts, entitled to be subrogated to the rights of the creditor as the beneficiary of the incumbrance. *Chaffe* v. *Patterson*, 61 Miss., 28, distinguished.

FROM the chancery court of Leflore county.

HON. A. H. LONGINO, Chancellor.

The appellant alleged in her bill of complaint that the appellees, R. T. Golden and Mary, his wife, were indebted to the Bank of Greenwood in the sum of $880, evidenced by their promissory note for that sum, which note was secured by their deed of trust on certain lands constituting the homestead of the appellee, R. T. Golden; that, when this indebtedness fell due, they were unable to meet it, and the bank threatened to foreclose; they applied to the appellant for assistance, and prevailed on her to pay to the bank the sum of $308, which was applied by the bank as a credit on the said note and trust deed, and that, in consideration of this payment, which was made in January, 1892, the bank abandoned its foreclosure, and extended the time for payment of the balance due; that Golden and wife afterwards obtained a loan from other sources, and, having discharged the debt due to the bank, obtained a discharge and cancellation of the trust deed; that, in response to appellant's demands, they repeatedly promised to pay her the $308, but had failed to do so; that Mary Golden, the wife, had died intestate and insolvent, leaving an only child, the appellee, Reuben Golden, and that the appellee, .R. T. Golden, was also

insolvent, and that she, the appellant, by reason of the facts stated, was entitled to be subrogated to the rights and benefits of the bank in said trust deed to the extent of her said debt, other than which right of subrogation she was entirely without security, etc. The bill concludes with a prayer for a personal decree, and for subrogation to the benefits of the trust deed, sale of the lands, etc., and general relief.

The bill was filed in October, 1895, more than three years after the date of appellant's payment to the bank, and the appellees demurred thereto, setting up, among other causes of demurrer, the bar of the three years' statute of limitations. This demurrer having been sustained, the appellant amended her bill by showing that a note for said indebtedness, which she exhibited with the amended bill, had been executed and delivered to her by Golden and wife. The appellees also demurred to the amended bill, assigning, among other causes of demurrer, that the appellant had shown no right to the equity of subrogation prayed for.

*Rush & Gardner,* for appellant.

The appellant paid the money directly to the bank, and upon the urgent and repeated requests of Golden and wife, and it would seem that she is entitled to an equitable assignment *pro tanto* of the note and trust deed securing it that she in part paid. If she had paid the whole amount due on the note secured by the trust deed, she would have been entitled to an assignment of those instruments, and there is no reason why her rights should not be the same to the extent that she did pay the debt. *Bonner* v. *Lessley,* 61 Miss., 392; *Clark* v. *Wilson,* 56 Miss., 753. The fact that the money is paid before the sale should not defeat an equitable assignment where the payment has the effect of averting foreclosure and saving the land. Prior to the code of 1880, a married woman was not permitted to borrow money and buy land, and then refuse to pay the debt and still keep the land. The person advancing the money was subro-

gated in equity, and could follow the land and subject it to the debt. *Clark* v. *Clark*, 58 Miss., 68. This rule of subrogation did not arise because of any agreement by the married woman that the creditor should be subrogated, but in order to prevent her from doing an inequitable thing.

Where the money of a person has been applied to the payment of just debts against a trust estate which it was bound to pay, the party will be subrogated to the rights of the holders of the debts. "But it is only in a court of chancery that this just doctrine has yet found a home." *Hines* v. *Potts*, 56 Miss., 350. The appellant has no remedy save in equity.

In the case of *Chaffe* v. *Patterson*, 61 Miss., 28, it was held that the law gave to the complainant, Chaffe, the rights of a vendor of the land sought to be subjected, because his money had been used by the vendee in paying one of the purchase money notes.

*Coleman & Somerville*, for appellees.

A mere volunteer who pays the debt of another is not entitled to the equity of subrogation. The difficulty is to determine who are volunteers. In *Staples* v. *Fox*, 45 Miss., 681, in defining in whose favor subrogation will be decreed, it was said that "generally the person who discharges the debt by payment must be under a legal obligation to do so." It was also said in that case that where one pays off the heir to protect his own title, he will be subrogated. To this it may be added, that where one has innocently acquired an invalid title at a sale under a conveyance, or otherwise, he will be subrogated to the rights of him to whom his money has been paid. All these cases are explainable upon the idea that the payer has not knowingly undertaken the risk of his payment of the incumbrance, lien, or purchase money, and he will be protected because he has unwillingly been placed in such a situation that equity and good conscience require that he should be relieved and treated as the equitable assignee. No such reasoning ap-

plies to one who understandingly advances money to discharge a lien.

Subrogation, or substitution, is of a twofold nature. Conventional subrogation, where there is an agreement between the parties that the payer shall be subrogated to the rights of him whose lien he has discharged, or where facts exist from which such agreement may be inferred. The other kind is, where the law itself makes the contract for the parties, and sometimes in spite of them. In *Receiver* v. *Wortendyke*, 27 N. J. Eq., 658, the court said: "It is not sufficient that a person paying the debt of another should do so merely with the understanding on his part that he should be subrogated to the right of the creditor. Conventional subrogation can only result from an express agreement either with the debtor or the creditor."

The facts alleged show that the complainant was a mere volunteer. *Slaton* v. *Alcorn*, 51 Miss., 72; *White et al.* v. *Cannon et al.*, 125 Ill., 412; *Hough* v. *Ætna Life Ins. Co.*, 57 Ill., 318; *Small* v. *Stagg*, 95 Ill., 39.

It does not affect the result that the payment was at the request of the debtor or directly to the creditor. *Pearce* v. *Coal Co.*, 121 Ill., 517; *Bunn* v. *Lindsey*, 95 Mo., 250; *Chapman* v. *Cowles*, 61 Ala., 108; *Pettus* v. *McKinney*, 56 Ala., 41; *Durant* v. *Davis*, 10 Heiskell (Tenn.), 522. See, also, *Griffin* v. *Proctor*, 14 Bush, 171; *Nash et al.* v. *Taylor*, 83 Ind., 347.

The case of *Chaffe et al.* v. *Patterson et al.*, 61 Miss., 28, relied on by counsel for appellant, has no application to the matter in controversy.

WHITFIELD, J., delivered the opinion of the court.

There was no subrogation here, legal or conventional. One who discharges for the debtor to the creditor, who holds an incumbrance or lien securing the debt, such debt, by agreement express or reasonably inferable from the facts of the particular case, that he shall have the incumbrance or lien kept alive for his benefit, is protected within the rule for conventional subro-

gation.    In such case there is an agreement, equally whether
it be express or so implied, and the agreement is for, and se-
cures, subrogation.    One who discharges to the creditor hold-
ing such lien or incumbrance, the debt, when he is, himself,
under some legal obligation to pay the debt, is protected within
the rule for legal subrogation, quite independently of agree-
ment, express or implied.    But he who discharges to the cred-
itor holding such lien or incumbrance, a debt of the debtor,
under circumstances making him a prime volunteer, is not
entitled to subrogation.    Mere payment, in and of itself, never
entitles to subrogation, and appellant's case rests on mere pay-
ment alone.    Here a note was taken for the money loaned from
the debtor, with no agreement, express or reasonably inferable
from the facts, that the trust deed should be kept alive for the
security of the lender, who was under no legal obligation to
pay, and who paid only a part of the secured debt.    *Staples* v.
*Fox*, 45 Miss., 681; *Howell* v. *Bush*, 54 Miss., 445; *White* v.
*Cannon*, 125 Ill., 412; Sheldon on Subrogation, §§ 3, 241,
240, 245, 246.    It makes no difference that the money is loaned
to pay off a lien, if that bare fact be all.    Sheldon on Subro-
gation, § 243; *Gardenville Association* v. *Walker*, 52 Md., 452.
The reason why one who has innocently acquired an invalid
title at a sale is subrogated to the rights of him to whom his
money has been paid, is, as very correctly put by counsel for
appellee, "that the payee has not knowingly undertaken the
risk of his payment of the incumbrance, lien, or purchase
money."

    In *Chaffe* v. *Patterson*, 61 Miss., 28, there was no appeal by
Mrs. Henry from the decree of the chancellor in the litigation
between her and John Chaffe & Sons holding Chaffe & Sons
entitled to subrogation to the rights of her vendor against the
Montgomery lands.    That holding was clearly erroneous, and
would have been reversed on appeal.    But it stood unreversed,
and so was the law of that particular case; and Patterson *et al.*,
in their litigation with Chaffe & Sons, were affected with notice

that it was the law of that case, the decree standing unreversed and unappealed from.    And that is all that is held in that case. The decree is correct, and it is

*Affirmed.*