# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00376-SCT

*RADCO FISHING AND RENTAL TOOLS, INC.,*
*DYNASTY ENERGY SERVICES, LLC, AND*
*STEWART F. DUBOSE*

**v.**

*COMMERCIAL RESOURCES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2023 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | CAREY R. VARNADO |
| | TERRY L. CAVES |
| | MARK A. NELSON |
| | JOHN G. HOLADAY |
| | JOHN A. PIAZZA |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN G. HOLADAY |
| | DONALD W. MEDLEY |
| | JOHN A. PIAZZA |
| ATTORNEYS FOR APPELLEE: | MARK A. NELSON |
| | TERRY L. CAVES |
| | RISHER G. CAVES |
| | NED A. NELSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND SULLIVAN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Commercial Resources, Inc., won a jury verdict against Dynasty Energy Services, Inc.,

Radco Fishing and Rental Tools, Inc., and Stewart Dubose for outstanding principal and

interest under an Accounts Receivable Line of Credit agreement. After trial, attorneys' fees were awarded by the trial judge to Commercial Resources. Dynasty, Radco and Stewart appeal and argue multiple errors occurred before, during and after trial. This Court finds no error and affirms the judgment.

## FACTS AND PROCEDURAL HISTORY

*1.     Accounts Receivable Line of Credit*

¶2.     In June 1984, John Dubose Sr. formed Radco Fishing and Rental Tools, Inc., a business, interestingly enough, engaged in the repair of oil wells. In June 2004, John offered the family business to his son Stewart Dubose, who had been working in the oil business since he was young. At that time, Radco did not have many clients, and Stewart had a separate successful swabbing business.[1] Stewart sold his swabbing business and agreed to take over Radco.

¶3.     John and Stewart engaged an attorney who helped them form the Dubose Limited Family Partnership, with Stewart as executor and John as coexecutor. The Dubose Limited Family Partnership was intended to own all shares of Radco; however, the shares were never transferred. John informed Stewart and the attorney that the stock had been lost.

¶4.     Stewart, nevertheless, began to grow Radco's business and maintained a title at the company as "president, CEO." Stewart controlled the corporate checkbook, maintained the

---

[1]Stewart explained in a deposition that "swabbing" is "basically a rig that's got 18,000 foot [sic] of cable and it – it swabs natural gas wells."

2

corporate records and signed the corporate tax returns. John received a salary and at Stewart's specific request would take jobs for the company. Looking for a way to increase Radco's cash flow, Stewart engaged Commercial Resources, Inc., for an accounts receivable line of credit. Commercial Resources was a business formed in 2000 by Doug Montague and his father for the investment of their retirement funds. Montague knew Stewart personally and offered a more competitive rate than Stewart's previous lender, Interstate Billing.

¶5.     In July 2013, Commercial Resources and Radco entered into an Accounts Receivable Line of Credit agreement for $200,000 at an interest rate of 1 percent per month on the $200,000 line of credit. Stewart signed a personal guaranty of the debt. The terms of the agreement were that Radco would present Commercial Resources with a duplicate bill it had sent one of its customers and that Commercial Resources would provide to Radco the full amount of the bill. Within sixty days, Radco would be obligated to pay the money back to Commercial Resources, preferably from the money that Radco collected from the customer along with the 1 percent interest per month. The agreement was later amended by a second written Accounts Receivable Line of Credit agreement with the same terms, except the credit line was increased to $300,000 in available cash. Stewart also personally guaranteed this new agreement.

¶6.     Commercial Resources advanced more than two million dollars to Radco under the agreement from July 2013 to June 2015. In June 2015, Commercial Resources advanced its last payment to Radco. In July 2015, Montague became chief financial officer (CFO) of

3

Radco. Stewart was frequently out of the office working on oil rigs for Radco and explained that he asked Montague to take the job essentially to safeguard the checkbook and to keep people from coming into the office and writing checks while he was away. At the time, Montague was also Stewart's attorney, and Stewart testified that he trusted Montague to safeguard the checkbook and to negotiate payments with his vendors/creditors.

¶7. In late 2015, John took control of Radco from Stewart and Montague following an incident when John went to Radco's office in Laurel to get a check and discovered that the checkbook was at Montague's law office. John allegedly went to Montague's office, threatened Montague and took the checkbook and Stewart's signature stamp. On December 10, 2015, Montague stepped down from his role of CFO at Radco. On December 18, 2015, Stewart stepped down from his role at Radco. John then allegedly began liquidating assets of Radco.

¶8. In January 2016, John and Montague, on behalf of their companies, Radco and Commercial Resources, respectively, had a meeting about the overdue payments under the Accounts Receivable Line of Credit agreement. Montague agreed to lower the interest rate to 4 percent per year instead of 1 percent per month. In February 2016, Radco made one final payment of $833 on the Accounts Receivable Line of Credit agreement under the new negotiated rate. No further payments have been made.

    *2.    Settlement Agreement*

¶9. On June 17, 2016, Stewart filed a complaint in the Jones County Chancery Court

against John, Radco and the Dubose Family Limited Partnership for dissolution of the corporation, damages for breach of fiduciary duties and access to financial records. In proceedings not on review before this Court, Stewart and John agreed to settle their chancery court dispute. As part of their settlement, Stewart and John would sell Radco to Dynasty Energy Services, LLC. Stewart agreed in the order of dismissal that "John M. Dubose, Sr. owns all right, title and interest in and to the capital stock of Radco[.]" Stewart testified that he agreed to the settlement in exchange for indemnification for debts that he personally guaranteed for Radco.

### 3. Dynasty's Purchase of Radco

¶10. On August 16, 2016, Dynasty entered into a Letter of Intent with John and Radco proposing to purchase all issued stock of Radco and all assets of Radco and John.[2] Dynasty stated in the Letter of Intent, that upon assumption of ownership of Radco, it would agree to "[a]ssume and be responsible for timely paying and satisfying, or causing the company to timely pay and satisfy, all indebtedness, accrued liability and expenses of ongoing litigation of the Company outstanding as of the closing" and that "Stewart F. Dubose will be released of all personal guarantees as related to Radco business." The terms of the letter of intent were set to terminate on October 31, 2016, unless the parties mutually agreed to extend them or the parties manifested an intention for the terms to survive.

¶11. On November 28, 2016, Dynasty entered into a Purchase Agreement with John and

---

[2]It appears from the record that the Radco stock was no longer lost.

5

Radco. Dynasty purchased all stock and assets of Radco and any equipment and assets that John owned personally. Dynasty bought the mortgage on Radco's property from Trustmark National Bank and foreclosed on Radco. Dynasty now occupies Radco's building in Laurel. Radco ceased all operations the day after Dynasty purchased the company, and all employees were moved to Dynasty's payroll. Brad Cohen, Dynasty's manager, was appointed president of Radco and remains the only employee of Radco, presumably for the purpose of wrapping up affairs. Dynasty continued offering the same services as Radco, although Dynasty also offered a broader range of services.

### 4. Commercial Resources Collection Action

¶12. On November 16, 2017, Commercial Resources filed this action against Radco, Stewart and Dynasty for payment of the outstanding balance under the Accounts Receivable Line of Credit agreement. Commercial Resources alleged that Radco and Stewart had failed to reimburse Commercial Resources for the advanced money. Commercial Resources also alleged that Dynasty had acquired Radco and assumed the liability of the Accounts Receivable Line of Credit agreement but had "wholly failed and neglected to pay the sums now due[.]" Commercial Resources demanded $311,570.36 along with reasonable contractual attorneys' fees and interest.

¶13. Dynasty and Radco filed answers, and both filed counterclaims against Commercial Resources. Radco specifically pled breach of fiduciary duty, fraudulent inducement, breach of the implied covenant of good faith and fair dealing and negligence against Commercial

6

Resources for various roles Montague took with Radco as attorney, CFO, manager and lender. Dynasty and Radco brought counterclaims under Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act, claiming Commercial Resources' suit was filed for the purpose of harassment.

¶14. Stewart filed an answer and counterclaim. Stewart's counterclaim was that Commercial Resources was barred from bringing this case because of fraudulent inducement by Montague. This counterclaim was voluntarily dismissed by Stewart on March 22, 2022. On December 27, 2019, Stewart filed a cross-claim for declaratory judgment against Radco and Dynasty based on his argument that he should be indemnified. Stewart's cross-claim was eventually dismissed because he had failed to seek leave of the Court or permission from the parties to amend his complaint to add the cross-claim. Accordingly, the issue of Stewart's indemnification was not presented to the jury.

¶15. After a long and contested discovery period, the case was tried from April 5, 2022, to April 8, 2022. Stewart, Montague and Cohen provided testimony. Commercial Resources presented multiple documents, including the Purchase Agreement, the Letter of Intent, the Settlement Agreement and the Accounts Receivable Line of Credit agreements. Stewart admitted that the debt was owed but maintained that Dynasty was responsible for paying Commercial Resources. Montague testified that the amount of outstanding principal and interest totaled $448,528.60.

¶16. At the close of the evidence the court granted Commercial Resources' motion for

directed verdict against Radco and Stewart. The court granted a peremptory instruction directing the jury to "return a verdict for Commercial Resources, Inc. against Radco . . . and Stewart F. Dubose in an amount equal to unpaid principal and accrued interest due under the accounts receivable line of credit." A directed verdict against Dynasty and Radco's counterclaims was also granted, dismissing their counterclaims as to Montague's alleged conflicts of interest. The case proceeded to the jury.

¶17. The jury returned a verdict of zero against Radco and Stewart and found that Dynasty owed $448,528.60 to Commercial Resources. Commercial Resources filed a motion to alter or amend the judgment, requesting that the court find that Radco and Stewart were also responsible for the debt. Dynasty, Radco and Stewart also filed separate post-trial motions. On February 28, 2023, the judge entered an order altering the judgment and amending the jury's award to find that Radco, Stewart and Dynasty owed $448,528.60 to Commercial Resources.

¶18. On March 16, 2023, the judge entered an order awarding Commercial Resources attorneys' fees and denying the Stewart, Dynasty and Radco's post-trial motions. Stewart, Dynasty and Radco appeal.

### ISSUES PRESENTED

¶19. The issues raised by Dynasty and Radco are summarized as follows:

I. Whether the trial court erred by granting Commercial Resources' motion for partial summary judgment.

II. Whether the trial court erred by denying Dynasty and Radco's motions

8

for summary judgment.

III. Whether the trial court erred by granting Commercial Resources' Motion to Admit Parol Evidence.

IV. Whether the trial court erred by denying Dynasty and Radco's motions for directed verdict and granting Commercial Resources' motion for directed verdict.

V. Whether the trial court erred by granting Commercial Resources' jury instruction on liability.

VI. Whether the trial court erred by denying Dynasty and Radco's post-trial motion.

VII. Whether the trial court erred by altering the judgment.

VIII. Whether the trial court erred by granting Commercial Resources' motion to bifurcate and awarding attorneys' fees.

Stewart challenges the court's order altering the judgment by arguing a multitude of reasons why the original verdict of the jury should be reinstated. He also argues that Radco ratified the Commercial Resources agreement. These arguments will be addressed along with Radco and Dynasty's issues.

**DISCUSSION**

I. **Whether the trial court erred by granting Commercial Resources' motion for partial summary judgment.**

¶20. On January 13, 2020, Commercial Resources filed a motion for partial summary judgment asking for the dismissal of all of Dynasty and Radco's affirmative defenses.[3] The

---

[3]Dynasty and Radco took an "everything but the kitchen sink" approach to their pleading of defenses. Dynasty and Radco raised the following defenses: failure to state a

judge held a hearing and granted the motion for partial summary judgment based on its finding that "twenty-one and one quarter months elapsed from the time of filing of the Answers by Radco and Dynasty until the filing of the motion for Partial Summary Judgment by Commercial Resources, Inc." The judge relied on *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 181 (Miss 2006) (footnote omitted), which held:

> absent extreme and unusual circumstances—an eight-month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law.

The judge found that during the twenty-one and a quarter months that had passed, Dynasty and Radco had "actively participated in the litigation by filing counterclaims and third-party complaints; filing motions, propounding discovery, answering discovery, designating witnesses, and entering scheduling orders." The court found that Dynasty had stated at a hearing in June 2019 that a motion for summary judgment would be filed soon, but no motion was filed until after the motion for partial summary judgment by Commercial Resources was filed in January 2020. The Court found that there was no evidence in the

claim, equitable estoppel, doctrine of waiver, unclean hands, accord and satisfaction, assumption of risk, contributory and/or comparative negligence, duress, fraud, payment and release, statute of limitations and laches, any defenses in Mississippi Code Section 85-5-7 (Rev. 2021), failure to comply with Mississippi Rules of Civil Procedure 9 and 10, lack of consideration, statute of frauds, substantive and procedural unconscionability, duress, illegality (including malum prohibitum and malum in se), fraud in the inducement, failure to have a meeting of the minds, contract penalty, overreaching, frustration of purpose, impossibility of performance, ambiguity, voidability, unenforceability, alleged contract of adhesion, failure to join necessary and indispensable parties, insufficiency of process and insufficiency of service of process.

record that they had pursed their defenses. Partial summary judgment was granted "as to any pled affirmative defenses or other affirmative matters or rights which would serve to terminate the litigation" and as to the Rule 11 and the Litigation Accountability Act claims because there was no evidence that the claims were frivolous or filed for the purpose of harassment or delay.

¶21. An order granting partial summary judgment is an interlocutory order. *See **Lockhart v. Wilson (In re Est. of Thomas)***, 962 So. 2d 141, 144 (Miss. Ct. App. 2007) ("A partial summary judgment is not a final appealable order[.]"); ***Byrd v. Miss. Power Co.***, 943 So. 2d 108, 111 (Miss. Ct. App. 2006) ("Ordinarily, however, Mississippi courts (at the trial and appellate levels) treat a partial summary judgment as an interlocutory order and not as a final judgment."). Issues in an interlocutory order may be reviewed on direct appeal after a final judgment. ***Creel v. Bridgestone/Firestone N. Am. Tire, LLC***, 950 So. 2d 1024, 1027 (Miss. 2007) (internal quotation marks omitted) (quoting ***Kimball, Raymond & Co. v. Alcorn & Fisher***, 45 Miss. 145, 149 (1871) ("An appeal from the final decree opens for consideration all prior interlocutory orders, any way connected with the merits of the final decree.")). This Court reviews a trial court's grant or denial of a motion for summary judgment under a de novo standard. ***Webb v. Braswell***, 930 So. 2d 387, 395 (Miss. 2006) (citing ***Williams v. Bennett***, 921 So. 2d 1269, 1271 (Miss. 2006)).

¶22. Commercial Resources argues that this issue is not preserved for appeal because Dynasty and Radco failed to include this issue in their post-trial motion. Radco and Dynasty

did, however, include a general statement in their post-trial motion that it "incorporates into this Motion all of the arguments, positions and Motions presented . . . before and at trial." Dynasty and Radco also readdressed the issue at the directed verdict phase of the trial and appealed the order granting partial summary judgment. We find that this issue is preserved for appellate review. Nevertheless, the issue is without merit.

¶23.   Dynasty and Radco contend that the judge improperly made a "blanket ruling" on its affirmative defenses when it should have evaluated each defense specifically and made specific findings for each. Dynasty and Radco maintain that the trial court is required to evaluate each defense to determine whether it is a substantive or affirmative defense and then look at whether procedural issues exist and whether the defense is supported by the evidence. Dynasty and Radco also allege that it was error for Commercial Resources to request summary judgment on each of their defenses without addressing each defense specifically. Dynasty and Radco, however, also did not take the time before the trial court to argue each defense and do not on appeal take time to argue error for each specific defense. Commercial Resources argues that Dynasty and Radco failed to show that their defenses were not frivolous and failed to cite authority that the trial court must evaluate each defense specifically.

¶24.   Dynasty and Radco rely on *Horton* to support the argument that waiver of a party's affirmative defense must be decided by the trial court on a "case by case basis." *Horton*, 926 So. 2d at 181. Dynasty and Radco's reliance on the statement from *Horton* is misplaced.

The portion of **Horton** relied on actually states: "[w]e decline today to set a minimum number of days which will constitute unreasonable delay in every case, but rather we defer such findings for the trial court on a case by case basis." **Id.** Dynasty and Radco take the statement from **Horton** out of context. The statement from **Horton** pertains to this Court's finding that there is not a specific number of days that would constitute an unreasonable delay, not whether a trial court is required to make a specific finding on the merits of each affirmative defense.

¶25.    Dynasty and Radco further argue that neither party cites any case or rule that authorizes the trial court to dispose of its affirmative defenses in a blanket ruling. Dynasty and Radco rely on **Horton** and **Hinton v. Sportsman's Guide, Inc.**, 285 So. 3d 142, 149 (Miss. 2019), for the Court's discussion of each of the defenses that were dismissed. Dynasty and Radco's argument is that the trial court should have made specific rulings on each defense, just as these two cases contain specific rulings on each defense. This argument is without merit. Neither **Horton** nor **Hinton** require the court to make specific findings as to each defense separately. Dynasty and Radco submitted more than thirty defenses in their complaint. The authority submitted by Dynasty and Radco does not support a finding that the trial court was required to make specific findings on the merits of each of their alleged defenses. The question is, after all, whether they were waived.

¶26.    Dynasty and Radco contends that the Court had to evaluate which of its defenses were affirmative and which were substantive. Dynasty and Radco contend that only their

13

affirmative defenses could be waived but not their substantive defenses. Dynasty and Radco rely on *Mladineo v. Schmidt*, 52 So. 3d 1154, 1160 (Miss. 2010), in which the Court addressed "whether the defendants waived their right to rely on the 'duty-to-read' and 'imputed-knowledge' doctrines" as affirmative defenses. The trial court in *Mladineo* had denied summary judgment on these two doctrines after finding that they were substantive rules of law not affirmative defenses and were thus not waivable under *Horton*'s holding. *Id.* at 1160. This Court affirmed the trial court's ruling.

¶27. Dynasty and Radco's argument, however, is again without merit. The trial court in the present case granted summary judgment as to "any pled affirmative defenses or other affirmative matters or rights which would serve to terminate the litigation." Per the trial court's written order, only affirmative defenses were dismissed, as allowed under *Horton*. Dynasty and Radco do not point out for this Court or the trial court exactly which defenses it claims were substantive and therefore wrongly dismissed. Dynasty and Radco do, however, argue generally that this Court has found that "very few contractual defenses can be waived" and that it was error for the trial court to dismiss their contractual defenses. Their complaints listed contractual defenses as

> lack of consideration, the statute of frauds, substantive and procedural unconscionability, duress, illegality (including malum prohibitum and malum in se), fraud in the inducement, failure to have a meeting of the minds, contract penalty, overreaching, frustration of purpose, impossibility of performance, satisfaction and accord, ambiguity, voidability, unenforceability and that the contracts are contracts of adhesion.

¶28. In support of their argument that contractual defenses cannot be waived, Dynasty and

Radco cite *Pass Termite & Pest Control, Inc. v. Walker*, 904 So. 2d 1030, 1033 (Miss. 2004). The Court in *Pass* did not hold that contractual defenses cannot be waived. The *Pass* Court addressed whether the failure to affirmatively plead a claim to compel arbitration, as required by Mississippi Rule of Civil Procedure 8(c), barred the defendant from compelling arbitration. *Id.* at 1033. The Court found that "Pass's failure to assert its right to arbitration in its answer in contravention of Rule 8's provisions is at least a factor we may consider along with the other facts existing in this case." *Id.* The Court then ruled that "a 237-day delay before invoking arbitration, coupled with" involvement in the discovery proceedings, effectively waived the party's ability to compel arbitration. *Id.* at 1035. Dynasty and Radco do not give any further explanation as to why *Pass* would support their argument.

¶29. Dynasty and Radco claim that the trial court's ruling "severely impacted the trial of the case" because they were unable to argue all defenses or present evidence in support of their defenses. Dynasty and Radco, however, do not show that they were in any way prejudiced by the dismissal. Instead, the record shows that Dynasty and Radco at trial were allowed to argue specific defenses and that the trial court therefore evaluated whether specific defenses were viable.

¶30. Further, during the jury instruction discussion at trial, Dynasty argued against the peremptory instruction on liability on the basis of frustration of purpose and impossibility of performance, two of their pled contract defenses. A discussion on whether those defenses had been pled, supported by the evidence and dismissed on summary judgment ensued. A

15

portion of the trial judge's ruling from the bench found that there was no evidence to support those two defenses.

¶31. Dynasty and Radco's continue that they were essentially penalized for failing to file a summary judgment motion before the dispositive motion deadline. This argument is without merit. The trial court's finding was based on the passage of time and the defendant's participation in the litigation, proper considerations under *Horton*. Dynasty and Radco argue that they needed discovery to obtain evidence to support their defenses. Dynasty and Radco had twenty-one and a quarter months to gather evidence, and the trial court did not err by finding that twenty-one and a quarter months coupled with participation in the litigation was an unreasonable delay in the litigation.

¶32. Dynasty and Radco finally argue that it was error for the trial judge to dismiss their Rule 11 and Mississippi Litigation Accountability Act claims. Those claims were dismissed because the trial court found that there was no proof that Commercial Resources' claims were frivolous or filed for the purpose of harassment. We agree. There was no evidence to support a finding that Commercial Resources' claims were frivolous or filed for the purpose of harassment. The record makes clear they were not. They were to collect a valid debt.

¶33. This Court finds that the trial court did not err by granting partial summary judgment. The record shows that twenty-one and a quarter months passed without any evidence that Dynasty and Radco were pursing their affirmative defenses. The trial court did not abuse its discretion by finding that twenty-one and a quarter months was an unreasonable delay.

16

Whether the trial court dismissed substantive rather than affirmative defenses is an argument without merit. The trial court specifically stated that it was dismissing affirmative defenses. Dynasty and Radco did not show how any of their defenses were viable or make a proffer of any evidence to support their defenses. Dynasty and Radco instead presented many defenses, argued generally that they should not have been dismissed and now complain that they were dismissed too generally. Dynasty and Radco's arguments are without merit. The trial court's grant of summary judgment on Dynasty and Radco's affirmative defenses is affirmed.

### II. Whether the trial court erred by denying Dynasty and Radco's motions for summary judgment.

¶34. Dynasty and Radco brought separate motions for summary judgment on May 5, 2020. Dynasty argued that Commercial Resources failed to articulate a theory of liability against Dynasty, the facts did not support that Dynasty had successor liability and if Dynasty is found liable then it should only be liable for the net value of the assets purchased from Radco. Radco argued that Stewart did not have authority to enter into the agreement with Commercial Resources and that Montague should be barred from recovery by the doctrine of equitable estoppel. The trial court denied summary judgment to Dynasty and Radco on these issues.[4]

¶35. The general rule is that the denial of a motion for summary judgment is not reviewable on appeal because it is rendered moot by a trial on the merits. *City of Jackson v. Johnson*,

---

[4]Neither Dynasty nor Radco sought interlocutory review of this issue.

17

343 So. 3d 356, 367-68 (Miss. 2022). "The general rule adopted in *Johnson* contemplates a scenario in which the universe of evidence presented at a final trial naturally and necessarily supersedes the limited universe of evidence available at the time summary judgment was denied; therefore, the proper appeal is from the final judgment." *Newton Cnty. v. Deerfield Ests. Subdivision Prop. Owners Assoc., LLC*, 385 So. 3d 765, 775 (Miss. 2024) (citing *Johnson*, 343 So. 3d at 367). The issues raised in Dynasty and Radco's motions are not reviewable on appeal as they proceeded to trial and were litigated. This argument is moot.

### III. Whether the trial court erred by granting Commercial Resources' Motion to Admit Parol Evidence.

¶36. On April 1, 2021, Commercial Resources filed a Motion to Admit Parol Evidence based on its argument that the Purchase Agreement was ambiguous. The trial court held a hearing and found that the Purchase Agreement was ambiguous and that parol evidence would be allowed.[5] Dynasty and Radco contend that the motion to admit Parol Evidence was a dispositive motion filed after the dispositive motion filing deadline and was based merely on a statement that the Purchase Agreement was ambiguous.

¶37. "Questions of contract construction and ambiguity are 'questions of law that are committed to the court rather than questions of fact committed to the fact finder.'" *Epperson*

---

[5]Dynasty and Radco sought interlocutory review of this issue, but it was denied. Order, *Radco Fishing & Rental Tools, Inc. v. Com. Res., Inc.*, No. 2021-M-01107-SCT (Miss. Oct. 6, 2021).

*v. SOUTHBank*, 93 So. 3d 10, 17 (Miss. 2012) (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc*, 857 So. 2d 748, 752 (Miss. 2003)). This Court reviews questions of law de novo. *Royer Homes of Miss., Inc.*, 857 So. 2d at 752. "The parol evidence rule is one of substantive law rather than of evidence." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (citing *Fontenot v. Dorchak (In re Est. of Parker)*, 673 So. 2d 1379, 1383 (Miss. 1996)). The initial question of whether the contract is ambiguous is a question of law, but "[t]he subsequent interpretation of the ambiguous contract presents a finding of fact," which, in this case, was reserved for the fact-finding jury. *Lamb Constr. Co. v. Town of Renova*, 573 So. 2d 1378, 1383 (Miss. 1990) (citing *Bryant v. Cameron*, 473 So. 2d 174, 179 (Miss. 1985)).

¶38. We first address whether the motion to admit parol evidence was a dispositive motion filed outside of the dispositive motion filing deadline. This issue turns on whether this motion to admit parol evidence is a dispositive motion. Dynasty and Radco do not provide any authority to support their argument that the motion was a dispositive motion, which it is clearly not; instead, they merely state that whether the contract was ambiguous was an important issue that should have been decided earlier in the case.

¶39. Dynasty and Radco presented this argument to the trial court and argued that the issue of ambiguity of the contract had to be made via a summary judgment motion. The trial court stated, "I do not find that the only way that the Court can make a decision on whether to admit parol evidence is if there has been a summary judgment rendered on the issue of

ambiguity." We find no authority to support Dynasty and Radco's argument that the motion to admit parol evidence was a dispositive motion. It was appropriate for Commercial Resources to submit its request to admit parol evidence at the same time as its motion in limine on April 1, 2020. Both the motion in limine and the motion to admit parol evidence were discussed at the same pretrial hearing relating to evidence and topics that would be admissible at trial. Further, whether the contract was ambiguous may not have been determinative to the outcome of the trial. This issue was only relevant to whether evidence surrounding the formation of the Purchase Agreement would be admissible.

¶40. In addressing whether the trial court erred by allowing the admission of parol evidence, this Court uses a three-step approach to contract interpretation. *Royer Homes of Miss., Inc.*, 857 So. 2d at 752 (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)). "First, the 'four corners' test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Id.* (citing *Perkins*, 558 So. 2d at 352). "Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent." *Id.* at 752-53 (citing *Perkins*, 558 So. 2d at 352). "Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary 'canons' on contract construction." *Id.* at 753 (citing *Perkins*, 558 So. 2d at 352). "Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic evidence or parol evidence." *Id.* (citing *Leach v. Tingle*, 586 So. 2d 799, 801-02 (Miss. 1991)). This three-tiered approach, however,

20

is not "a rigid 'step-by-step" process, and the "overlapping of steps is not inconceivable."

*Id.* (internal quotation mark omitted) (citing *Perkins*, 558 So. 2d at 351 n.6).

¶41.    In its motion to admit parol evidence, Commercial Resources argued that there were five documents in the record that pertained to the purchase of Radco by Dynasty: a Letter of Intent, Purchase Agreement, Settlement Agreement, order dismissing the chancery proceedings, and a Schedule of Liabilities. Commercial Resources alleged that through these contracts, Dynasty purchased the stock of Radco and assumed certain liabilities.  Two versions of the Letter of Intent and two versions of the Schedules of Liabilities were included in the record.  Commercial Resources contended that "the circumstances surrounding the contracts and other written instruments were ambiguous."

¶42.    The trial court evaluated the four corners of the Purchase Agreement to determine if ambiguity existed.  Section 2.1 of the Purchase Agreement stated, in part:

> Subject to the terms of Section 8.7 of this Agreement, Purchaser does not and shall not assume or in any way undertake to pay, perform, satisfy or discharge any obligation, liability or contractual commitment of any type or kind of Seller or the Company.

Section 8.7 of the Purchase Agreement, titled "DuBose Guarantees," stated:

> In consideration hereof, Purchaser hereby agrees that within thirty (30) days after the Closing, it shall cause the Company to use reasonable efforts to seek to obtain the release of Stewart F. DuBose and the Seller from all personal guarantees of the obligations of the Company listed on Schedule 4.1 (cc) (the "DuBose Guarantees").  In the event the Company is unable to obtain the release of Stewart F. DuBose or Seller from any or all of the DuBose Guarantees, the Company shall indemnify Stewart F. DuBose and Seller for any amounts he is obligated to pay under the DuBose Guarantees.  All indemnity claims under this Section 8.7 shall be subject to the same

21

indemnification procedures set forth in Section 9.3 of this Agreement. Seller hereby acknowledges and agrees that neither Purchaser nor the Company shall have any obligation to obtain the release of, or to indemnify, either Stewart F. DuBose or the Seller from any personal guarantees that are not listed in Schedule 4.1 (cc).

Section 1.1 of the Purchase Agreement defined the terms *Company* as Radco, *Purchaser* as Dynasty and *Seller* as John. At the time of the motion, there were two different Schedule 4.1(cc)s in the record: one listed a Commercial Resources debt of $249,073.67, and the other did not list Commercial Resources.

¶43. Based on these provisions, the trial court found that the Purchase Agreement was ambiguous on the issue of whether Dynasty assumed the obligation to satisfy the debt owed by Radco to Commercial Resources and indemnify Stewart for the Commercial Resources debt. The trial court provided two reasons that the Purchase Agreement was ambiguous:

First of all, as already noted, on one of the Schedule 4.1 (cc) forms, the indebtedness to Commercial Resources is listed; it is not listed on the other 4.1 (cc) that has surfaced.

Secondly, Dynasty has, by the Purchase Agreement, acquired all of the stock and the assets of Radco used in operating its business. It would appear from this that Dynasty would be in complete control of [] Radco following the purchase/sale. Further, the last sentence of Section 8.7 states that if the guarantees of Stewart F. Dubose were not listed on Schedule 4.1 (cc), then neither Dynasty nor its newly purchased company Radco would have any obligation to obtain the release of Stewart F. Dubose or indemnify him from any such non-listed personal guarantees or the obligations of Radco. A corollary to that would be that Dynasty and Radco would obtain the release of or indemnify Stewart F. Dubose from those guaranteed obligations **that are listed**.

The trial court found that there were two reasonable interpretations of the Purchase

Agreement. In one interpretation, Dynasty did not expressly obligate itself to pay the debt to Commercial Resources or indemnify Stewart F. Dubose on his personal guarantee. Alternatively, Section 2.1 and Section 8.7 imply that Dynasty would pay the debt to Commercial Resources and indemnify Stewart if the debt was actually listed in Schedule 4.1(cc), of which there were two conflicting versions. The trial court allowed "evidence on the total circumstances of the sale of Radco to Dynasty" to be admissible at trial, "including Dynasty's knowledge of the debts of Radco, Radco's remaining assets and ongoing viability after the sale, and the value of the assets sold to Dynasty."

¶44. On appeal, Dynasty and Radco argue that Section 2.1 of the Purchase Agreement clearly and unambiguously states that Dynasty "does not and shall not assume or in any way undertake to pay, perform, satisfy or discharge any obligation, liability or contractual commitment of any type or kind of [John M. Dubose Sr. or Radco]."[6] Dynasty and Radco argue that Commercial Resources sought to introduce evidence that contradicts the plain language of the Purchase Agreement in opposition to this Court's caselaw. *See Epperson*, 93 So. 3d at 16-17 ("The parol evidence rule 'provides that where a document is incomplete parol evidence is admissible to explain the terms but, in no event, to contradict them.'" (quoting *Busching v. Griffin*, 542 So. 2d 860, 865 (Miss. 1989)). Dynasty and Radco maintain that the trial court's allowance of parol evidence "radically affected the outcome

---

[6]Dynasty and Radco conveniently quote only a portion of Section 2.1, and omit the requirement that subjects this statement to the terms of Section 8.7.

of the trial by opening the door for the introduction of misleading and confusing parol evidence which caused the jury to speculate about Dynasty's liability."

¶45.  Dynasty and Radco's arguments are without merit.  The trial court was faced with two versions of the Purchase Agreement's Schedule 4.1(cc) that were directly contradictory. Whether Schedule 4.1(cc) recognized the debt to Commercial Resources impacted the theory of liability in the case.  Further, whether the language of Section 2.1 and 8.7 would require Dynasty to assume responsibility for the debt under Schedule 4.1(cc) was a question to be decided by the fact-finding jury.  *Royer Homes of Miss., Inc*, 857 So. 2d at 752 ("In the event of an ambiguity, the subsequent interpretation presents a question of fact for the jury which we review under a substantial evidence/manifest error standard." (citing *Clark v. State Farm Mut. Auto Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998))).  The trial court's grant of the motion to admit parol evidence based on a finding that the Purchase Agreement was ambiguous is affirmed.

> **IV.  Whether the trial court erred by denying Dynasty and Radco's motions for directed verdict and granting Commercial Resources' motion for directed verdict.**

¶46.  This Court reviews the trial court's grant or denial of a directed verdict de novo. *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006).  This Court considers "the evidence in the light most favorable to the non-movant[.]" *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 872 (Miss. 2006).  "If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion

24

should not be granted." *Id.* at 873 (internal quotation mark omitted) (quoting *Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1055 (Miss. 2003)).

¶47. On appeal, Dynasty challenges the denial of its verbal motion for a directed verdict. While Dynasty moved for a directed verdict on numerous grounds, on appeal, Dynasty specifically argues that Commercial Resources had failed to prove any theory of liability against Dynasty. They are incorrect. Commercial Resources presented the Purchase Agreement, Letter of Intent and Settlement Agreement and argued before the trial court that its theory of liability would be that Dynasty assumed liability for the debt under the Purchase Agreement. Commercial Resources clearly presented a theory of liability.

¶48. Radco challenges the denial of its verbal motion for directed verdict, arguing that Commercial Resources had failed to prove Stewart had corporate authority to enter into the Accounts Receivable Line of Credit agreement on behalf of Radco, so Radco is not bound by the agreement. Radco's argument also challenges the trial court's grant of directed verdict for Commercial Resources against Stewart and Radco. Further, their argument addresses an argument raised by Stewart on appeal — that Radco ratified the agreement with Commercial Resources. Commercial Resources and Stewart agree on the ratification issue, and Radco does not address ratification specifically. This Court finds that Radco's arguments are not persuasive.

¶49. Stewart testified that he had corporate authority to enter into the agreement with Commercial Resources. He testified that he had signed mortgage documents and tax returns.

25

He testified that the had a stamp of his signature to stamp the corporate checks. Montague testified that in his dealings with Radco and Stewart from 2007 to 2013, prior to the Accounts Receivable Line of Credit agreement, Montague "knew that Stewart had borrowed money and done business on behalf of Radco for years, and [he] knew that [Stewart] had borrowed money at the bank and signed as president of Radco." Taking the evidence in the light most favorable to Commercial Resources, we find that Radco's motion for directed verdict was correctly denied.

¶50.    After Commercial Resources rested, the trial court granted a direct verdict against Radco and Stewart, finding that reasonable minds could not differ on whether the debt was owed. The trial court found it convincing that Stewart managed Radco for ten years, signing documents as president of Radco without objection from any shareholder, namely John. Further, the trial court found that the agreement between Stewart and Montague went on for two full years with millions of dollars being exchanged without John interfering, calling for a vote or voicing a concern about the corporate bylaws. The trial court found that "[t]he shareholders ratified the actions of Stewart DuBose in entering into [the] loan arrangement with Commercial Resources."

¶51.    Radco contends that "[t]he only evidence to support Stewart Dubose's contention that he had authority to enter into this loan agreement was [Stewart's] own self-supporting testimony and evidence which suggested that other creditors had accepted Stewart Dubose's authority to enter into other loan contracts." Radco introduced the Dubose Family Limited

26

Partnership bylaws at trial to prove that Stewart had failed to comply with the bylaws for gaining approval to enter into a loan transaction. Radco argues that Stewart "did not offer any evidence relating to the governing procedures adopted by the partnership but simply testified that he was the Executor and his father was the Coexecutor of the partnership at all pertinent times." Radco does not address the trial court's finding of ratification but instead maintains that Stewart had no authority.

¶52. Again, this argument is without merit. The evidence, taken in the light most favorable to Commercial Resources, shows that the trial court correctly denied Radco's motion for directed verdict and, taking the evidence in the light most favorable to Radco and Stewart, granted Commercial Resources motion for directed verdict. We affirm the trial court's finding that reasonable minds could not disagree over whether Stewart had the authority to bind Radco. Further, John made payment to Commercial Resources after he took control of Radco from Stewart. Stewart and Commercial Resources are correct in their argument that Radco ratified the Accounts Receivable Line of Credit agreement.

### V. Whether the trial court erred by granting Commercial Resources' jury instruction on liability.

¶53. Dynasty alone brings a separate argument that it was error for the trial court to grant instruction P-2B, which stated:

> The Court instructs the jury that if you find from a preponderance of the evidence that the Defendant, Dynasty Energy Services, LLC, *became responsible* for the debt of Radco Fishing and Rental Tools, Inc. to Commercial Resources, Inc. *pursuant to the Purchase Agreement and other relevant contractual evidence*, then you shall return a verdict for Commercial

27

Resources against Dynasty Energy Services, LLC in an amount equal to unpaid principal and accrued interest due under the accounts receivable line of credit.

(Emphasis added.) This was the only instruction to the jury regarding how to determine whether Dynasty was liable to Commercial Resources for Radco's debt. Dynasty argues that this instruction constituted reversible error.

¶54. We review the trial court's grant or denial of a jury instruction for abuse of discretion. *Brown v. State*, 332 So. 3d 1287, 1289 (Miss. 2022) (citing *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012)). The trial court is given "considerable discretion regarding the form and substance of jury instructions[,]" and the concern when reviewing this issue "on appeal is simply that 'the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it." *Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 408 (Miss. 2013) (quoting *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992)). If "the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *St. Dominic-Jackson Mem'l Hosp. v. Martin*, 386 So. 3d 359, 370 (Miss. 2024) (internal quotation marks omitted) (quoting *Harden v. State*, 59 So. 3d 594, 608 (Miss. 2011)).

¶55. Dynasty contends that Commercial Resources did not present a case or any law to support instruction P-2B, which Dynasty contends allows a corporation that was not party to a contract to "become responsible" for contractual debt that arises under the contract. Dynasty takes specific issue with the term "became responsible," arguing that it is "vague,

28

confusing, and left the jury with no choice but to speculate on what that term meant."[7]

¶56. Commercial Resources argues that the general rule is "that a corporation which acquires the assets, but not the stock of another corporation, is not obligated for the liabilities of the acquired corporation." *Paradise Corp. v. Amerihost Dev., Inc.*, 848 So. 2d 177, 179 (Miss. 2003) (citing *Huff v. Shopsmith, Inc.*, 786 So. 2d 383, 388-89 (Miss. 2001)). This Court has created four exceptions to the general rule: "(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction was fraudulent." *Id.* (quoting *Huff*, 786 So. 2d at 388-89). Commercial Resources decided and explicitly stated that it would build its case and submit it to the jury on the first exception—express or implied assumption of the liabilities. Commercial Resources contends that assumption of liabilities is a question of fact in this case because it revolved around determining the intent of the parties and resolving any ambiguities in the five contractual documents surrounding Dynasty's purchase of Radco, i.e., the "Purchase Agreement and other relevant contractual evidence."

¶57. Commercial Resources also contends that because Dynasty purchased the stock and all the assets, Dynasty became liable. This Court notes, however, that this was not how the

---

[7]But speculation is unnecessary. "Responsible" is a commonly understood term. One of Webster's definitions, and the only one applicable to this case, of "responsible" is "liable to legal review or in case of fault to penalties[.]" *Responsible*, Merriam-Webster, merriam-webster.com/dictionary/responsible (last visited March 4, 2025).

jury was instructed. While there was evidence that Dynasty's purchase of Radco was of such a nature that would likely have subjected it to all liabilities of Radco, this was not the theory of liability that Commercial Resources pursued at trial. *See **Meridian Light & Ry. Co. v. Catar***, 103 Miss. 616, 60 So. 657, 658 (1912) ("Neither law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence and place itself practically beyond the reach of creditors, without assuming its liabilities." (citing *Thompson on Corporations* § 6082)). Therefore, it is unnecessary to address any argument on this issue.

¶58.   We find that Dynasty's argument that instruction P-2B was vague and failed to instruct the jury on the law is without merit. Commercial Resources pursued the theory of contractual assumption of liability, and the instruction directed the jury to consider the language of the Purchase Agreement and contractual evidence to decide if Dynasty "became responsible" for the debt. Although there was no instruction on what elements the jury was to consider, we do not find any reason or authority to deem the instruction error. The jury merely needed to consider the language of the contracts and decide whether those contracts held Dynasty equally responsible with Radco and Stewart to pay the debt.

¶59.   A form for the verdict was given in instruction P-4A which provided in relevant part:

  1.   "We, the jury, find for the Plaintiff and award unpaid principal and accrued interest against Radco Fishing and Rental Tools, Inc. in the amount of $          ."

  2.   "We, the jury, find for the Plaintiff and award unpaid principal and accrued interest against Stewart F. Dubose in the amount of $       ."

30

3.      Do you find by a preponderance of the evidence that Dynasty Energy Services, LLC *became responsible* for the debt of Radco Fishing and Rental Tools, Inc. pursuant to the Purchase Agreement and other relevant contractual evidence to pay the debt of Commercial Resources, Inc.?

. . . . .

4.      State the amount of debt owed to Commercial Resources, Inc. for unpaid principal and accrued interest which you find by a preponderance of evidence *to have been assumed and agreed to be paid by Dynasty Energy Services, LLC.*

(Emphasis added.) Dynasty contends that P-2B and P-4A are inconsistent because P-2B uses the term "became responsible" and P-4A uses the term "assumed and agreed to be paid." Dynasty further contends that neither instruction explains what is meant by these terms. Dynasty also contends that Instruction P-2B failed to inform the jury "what facts they have to find and who has the burden of proving or disproving those facts." ***Bus. Commc'ns, Inc. v. Banks***, 91 So. 3d 1, 13 (Miss. 2011) (internal quotation marks omitted) (quoting ***Neal v. State***, 15 So. 3d 388, 397 (Miss. 2009)).

¶60. Dynasty's argument is without merit. Instruction P-2B is not a vague instruction and P-4A does not conflict with P-2B. Instead, reading the instructions together, they correctly instruct the jury to consider the contractual documents presented at trial to determine the issue of assumption of the debt. Further, an instruction on the preponderance of the evidence was given that instructed the jury that "the burden of proof is upon the Plaintiff to prove the facts necessary for his cause by a preponderance of the credible evidence." The judge did not abuse his discretion by granting jury instructions P-2B or P-4A.

31

## VI. Whether the trial court erred by denying Dynasty and Radco's post-trial motion.

¶61.   Dynasty and Radco filed a combined Motion for Judgment Notwithstanding the Verdict, or in the Alternative, to Alter or Amend the Judgment, or in the Alternative, for a New Trial.  Although the parties filed a combined motion, they had separate headings in the motion designating each party's argument.  The trial court denied all requested relief.

¶62.   This Court reviews the denial of a motion for judgment not withstanding the verdict de novo.  *Forbes*, 935 So. 2d at 873.  A motion for judgment notwithstanding the verdict challenges the sufficiency of the evidence and asks "whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated."  *White*, 932 So. 2d at 32.   A motion for a new trial challenges the weight of the evidence, and denial of a motion for a new trial is reviewed for an abuse of discretion. *Miss. Transp. Comm'n v. United Assets, LLC*, 188 So. 3d 508, 514 (Miss. 2016) (quoting *Johnson v. St. Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 23 (Miss. 2007)).  A motion to alter or amend the judgment under Mississippi Rule of Civil Procedure 59(e) is reviewed under an abuse of discretion standard.  *Harrison v. Miss. Transp. Comm'n*, 57 So. 3d 622, 624 (Miss. 2011) (citing *Brooks v. Roberts*, 882 So. 2d 229, 233 (Miss. 2004)).

¶63.   In this motion, Radco specifically renewed its motion for directed verdict on the basis that Stewart did not have authority to enter the agreement with Commercial Resources.  Radco brings this same argument on appeal and argues that the trial court erred by denying

32

its motion for JNOV, a new trial or a judgment in its favor. Radco argued that Stewart testified that he had not spoken with John about the loan, held a meeting of Radco directors about the loan or received consent from the Radco shareholders to enter the loan. Radco argues that the verdict is erroneous, against the overwhelming weight of the evidence and manifestly unjust. For the reasons already stated in the directed verdict argument, this Court finds that Radco's post-trial arguments on Stewart's authority are without merit. The trial court correctly found that Radco had ratified the Accounts Receivable Line of Credit agreement.

¶64. Radco also incorporated into its post-trial motion "all of the arguments, positions, and Motions presented by Defendant Radco before and at trial." On appeal, Radco request this Court to grant relief "based on the numerous pretrial rulings made by the trial court, the numerous evidentiary rulings made by the trial court during trial over Defendant Radco's objection and the ruling of the trial court relating to jury instructions over Defendant Radco's objection." Radco on appeal cannot challenge generally all arguments, positions and motions. Radco must set forth exactly the rulings it challenges.

¶65. Mississippi Rule of Appellate Procedure 28(a)(3) states: "[n]o issue not distinctly identified shall be argued by counsel, expect upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified." Plain error applies when there has been "a deviation from a legal rule by the trial court that is plain, clear, obvious, and has prejudiced the outcome of the trial." *Maness v. K &A Enters. of Miss., LLC*, 250

So. 3d 402, 410 (Miss. 2018) (citing *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007)). Having reviewed the record closely, this Court finds no plain error. Radco's argument is without merit.

¶66. Dynasty, in the combined post-trial motion, renewed its motion for directed verdict on the basis that Commercial Resources failed to state in the trial court any theory of liability against Dynasty. Dynasty argued that it had not expressly agreed to be liable to Commercial Resources under the Purchase Agreement. Dynasty also challenges errors in the jury instruction on liability. Dynasty brings these issues for review on appeal, arguing that the trial court erred by denying its motion for JNOV. Dynasty requests that this Court reverse the trial court's denial of its motion to alter or amend the judgment and render judgment in favor of Dynasty. Alternatively, Dynasty requests this Court reverse and remand the case for a new trial on the issue of Dynasty's liability to Commercial Resources.

¶67. First, as already stated, Commercial Resources did articulate a theory of liability against Dynasty: assumption of liability under the Purchase Agreement. This theory was pled in Commercial Resources' complaint and at trial. Commercial Resources submitted only one charge to the jury. Commercial Resources' attorney stated: "[o]ur jury charge that we submitted today and last week only has the theory of liability for contractual assumption, and that's the only theory that we're proceeding under[.]" Dynasty's argument that Commercial Resources failed to provide a theory of liability is without merit.

¶68. Dynasty maintains that the verdict is against the overwhelming weight of the evidence

34

and that Commercial Resources "did not present any proof whatsoever to support the jury's finding that Dynasty was responsible for the debt allegedly accrued by Radco[.]"[8] This argument is also without merit.

¶69. Stewart testified that Dynasty had assumed the debt. Stewart testified that he dismissed his lawsuit against John and the Dubose Family Partnership in exchange for release by Dynasty for the Radco debt. The jury was presented with Section 2.1 and Section 8.7 of the Purchase Agreement. Further, Stewart testified that the Schedule 4.1(cc) with the Commercial Resources debt was the correct version attached to the Purchase Agreement. The jury heard Cohen admit that at the time Dynasty purchased Radco, Commercial Resources was "a disclosed known creditor of Radco[.]" The jury heard all this evidence and decided that Dynasty was liable for the debt. Taking this evidence in the light most favorable to Commercial Resources, we find that verdict is not against the overwhelming weight of the evidence. *Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 131 (Miss. 1989).

¶70. Dynasty's argument that it never expressly agreed to be liable for the debt to Commercial Resources was an issue for the jury to decide based on the evidence presented. Dynasty argues that it was not party to the loan agreement, and the various documents that were shown to the jury were used "to somehow infer liability on Dynasty for debt allegedly

---

[8]Although Dynasty lists this argument as a separate issue, this Court reviews it here because a motion for a new trial is a challenge to the weight of the evidence. *Miss. Transp. Comm'n*, 188 So. 3d at 514 (quoting *Johnson*, 967 So. 2d at 23).

owed to Plaintiff by Radco." This Court disagrees. The jury did not have to infer anything; instead, based on the evidence and the language in the Purchase Agreement the jury determined that Dynasty became liable for the Commercial Resources debt.

¶71. Dynasty again challenges the admission of the parol evidence. We have already addressed this issue. Dynasty also argues that the financial and business records that were introduced to prove Radco's financial status at the time Dynasty purchased Radco were erroneous. This Court finds that argument to be without merit. The financial records were found to be admissible, and the significance of the financial records is an issue that was determined by the jury. *Solanki v. Ervin*, 21 So. 3d 552, 569 (Miss. 2009) ("[T]he jury is responsible for weighing the evidence and determining the credibility of witnesses."). Dynasty also reargues that error occurred with the jury instructions. For the reasons already provided, we find that no error occurred with the jury instructions.

¶72. This Court affirms the trial court's denial of Dynasty and Radco's post-trial motions. Further, this Court finds no error that warrants reversal.

### VII. Whether the trial court erred by altering the judgment.

¶73. As stated, a motion to alter or amend the judgment under Rule 59(e) is reviewed under an abuse of discretion standard. *Harrison*, 57 So. 3d at 624 (citing *Brooks*, 882 So. 2d at 233). "A party moving to alter or amend the judgment 'must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law to prevent manifest injustice.'" M.R.C.P. 59 advisory comm. n.

(quoting **Brooks**, 882 So. 2d at 233).

¶74. The trial court in this case granted Commercial Resources' motion to alter or amend the judgment due to the jury's obvious disregard of the peremptory instruction and directed verdict. Specifically the judge found that

> allowing the jury's verdict of $0 damages against Radco and $0 damages against Stewart Dubose to stand would amount to clear error of law in disregard of the Court's Instruction to the jury to award a judgment against Radco and against Stewart Dubose for the amount of unpaid principal and unpaid interest. It is abundantly clear from the evidence that Radco and Stewart Dubose remain indebted to Commercial Resources for the unpaid principal and unpaid interest under the Accounts Receivable Line of Credit. Any judgment to the contrary would constitute manifest injustice.

The judgment of $448,528.60 was altered to be awarded against Radco, Stewart and Dynasty together with interest of 1 percent per month until paid in full.

¶75. Stewart argues that the trial court erred by entering this order. Stewart contends that the directed verdict was for liability and not damages, thus it was the jury prerogative to decide what amount Stewart should be required to pay. This Court finds that this argument stretches the bounds of credibility. The peremptory instruction clearly directed the jury to find for Commercial Resources against Radco and Stewart "in an amount equal to unpaid principal and accrued interest due under the accounts receivable line of credit." The jury decided the amount of unpaid principal and interest, which was identical to the number calculated by Montague in his testimony. Although the jury wrote this number down as due by Dynasty, the instructions clearly stated that it should also have been written on the verdict against Stewart and Radco. While the jury was allowed to calculate the amount of unpaid

37

principal and interest, they had no authority to disregard the peremptory instruction.

¶76.    Stewart contends that the jury instructions when read together show that the jury followed the instructions to determine that Dynasty was responsible for the outstanding principal and interest.  Stewart contends that awarding the verdict against Stewart and Radco would violate our caselaw by singling out the peremptory instruction when the jury was supposed to read the instructions as a whole.  *Causey v. Sanders*, 998 So. 2d 393, 409 (Miss. 2008) ("When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." (internal quotation marks omitted) (quoting *Milano v. State*, 790 So. 2d 179, 184 (Miss. 1997))).

¶77.    Stewart's argument is misplaced.  Reading the instructions as a whole, the jury was instructed to decide the amount of outstanding principal and interest that would be awarded against Radco and Stewart, award that amount against Radco and Stewart and then decide if Dynasty had, under the contracts in evidence, assumed responsibility for that debt.  There is no instruction that would allow the jury to disregard awarding the amount against Stewart and Radco.  On the contrary, the jury cannot disregard a peremptory instruction.  That is what makes it peremptory.

¶78.    Stewart also argues that Commercial Resources through its closing statements waived any chance of recovery against Stewart.  The statements in closing arguments that Stewart references were statements by Commercial Resources that it wanted to decide which party

it would pursue for recovery of the debt and that Dynasty should be among the parties that could be held resonsible. Stewart argues that no party objected to these statements on the basis that Commercial Resources was waiving damages and liability against Stewart.[9] This argument is without merit.

¶79. At closing arguments, Commercial Resources had already obtained the directed verdict against Radco and Stewart. Its statements that it wanted to recover from Dynasty were directed at the only remaining party that had not been found liable. Importantly, Stewart's argument does not show how the closing argument could overcome the directed verdict that had already been granted.

¶80. Stewart cites *Staples v. Fox*, 45 Miss. 667, 675 (1871) for the statement that the "plaintiff can waive damages even after judgment." *Id.* at 675. Stewart cites the memorandum of the arguments of counsel, which then would have been accepted by the reporter of decisions for publication, and not the official decision of the Court. *Id.* at 675. Further, *Staples* does not address whether a party, through closing arguments, can waive damages granted to it through a peremptory instruction before a final verdict is reached by the jury. *Staples* addresses sheriffs' surety bonds, which are irrelevant here. *Id.* at 679.

¶81. Stewart, nevertheless, maintains that Commercial Resources waived a damages verdict against Stewart. Commercial Resources would, of course, gain absolutely no benefit

---

[9]Commercial Resources correctly points out that to object to the closing arguments on this basis would have required Commercial Resources to object to its own closing arguments.

from waiving damages against Radco or Stewart. But Stewart goes further to argue that since Commercial Resources waived damages against Stewart, this Court lacks jurisdiction. We find that Commercial Resources did not waive any damages against Stewart and that this Court has appellate jurisdiction over these issues.

¶82. Stewart contends that substantial justice was served against Dynasty and that manifest injustice has occurred by the alteration of the judgment. Stewart argues that it was undisputed that Dynasty failed to obtain Stewart's release from the Radco debt in violation of the Purchase Agreement. Stewart's arguments essentially bring the issue of indemnification before this Court. While Stewart technically appealed the order dismissing his cross-claim for indemnification, he states in his brief that the "the court properly allowed the jury to consider the indemnification language in the contract evidence[.]" Because Stewart does not directly attack the trial court's logic on dismissing his cross-claim, we do not address the merits of that order.[10]

¶83. Stewart admitted to the debt, the jury was directed to return a verdict against Stewart in the amount of unpaid principal and interest and Stewart's cross-claim, his only right to recover against Dynasty, was dismissed. The cross-claim was, obviously, Stewart's vehicle to argue indemnification. Accordingly, we will not address his indemnification arguments. We find that the trial court correctly altered the jury verdict to correct the clear error of law

---

[10]Again, the cross-claim was dismissed due to Stewart's failure to follow proper procedure in bringing this claim. Stewart does not challenge the trial court's procedural findings.

that occurred by the jury ignoring the peremptory instruction.

¶84. Dynasty and Radco also argue that the trial court erred by altering the judgment. Radco and Dynasty argue that the "jury's verdict was a clear reflection of the incomplete and disjointed presentation of evidence by Plaintiff combined with the contradictory and inadequate jury instructions given by the trial court." We find these arguments meritless. The jury's verdict returned the exact amount requested by Montague in his testimony. The jury clearly heard and understood the issues and found that Dynasty was liable. The only error that occurred was that the jury placed a zero in the blank for damages against Radco and Stewart. There is no proof of any other confusion. We have already found that the jury instructions were not erroneous. Accordingly, the judge did not abuse his discretion by correcting the jury's obvious disregard for the peremptory instruction.

¶85. Dynasty and Radco further argue that the alteration of the judgment was actually an additur to increase the amount awarded against Radco and Stewart from $0 to $448,528.60. They contend that Commercial Resources is factually and legally inaccurate in its argument that the jury's verdict directly contradicted the Court's directed verdict. Like Stewart, Dynasty and Radco, seemingly making it up as they go, argue that the jury was instructed to find liability but not damages against Stewart and Radco. They apparently do not understand the clear language of the peremptory instruction. Also, similar to Stewart, they argue that the closing arguments created confusion concerning which party the jury should have awarded damages against. Dynasty and Radco contend that the jury's original verdict should be

reinstated because the confusion was created by Commercial Resources through the Commercial Resources jury instructions, closing arguments and evidence.

¶86. Again, these arguments are without merit. The jury instructions specifically directed the jury that "you shall return a verdict for Commercial Resources, Inc. against Radco Fishing and Rental Tools, Inc. and Stewart F. Dubose in an amount equal to unpaid principal and accrued interest due under the accounts receivable line of credit." It abundantly clear that the jury ignored this instruction by awarding zero damages against Radco and Stewart. The trial court did not abuse its discretion by correcting this apparent error in the jury's verdict.

## VIII. Whether the trial court erred by granting Commercial Resources' motion to bifurcate and awarding attorneys' fees.

¶87. Prior to trial, Commercial Resources filed a motion to bifurcate the trial on the issue of awarding attorneys' fees. The parties filed responses to the motion and argued the issue at a hearing on April 13, 2021. Although the trial court stated that the matter would be taken under consideration, no order was ever entered. After trial, Commercial Resources filed a motion arguing that it was entitled to attorneys' fees and expenses under the contract. Dynasty and Radco opposed the motion. The trial court held a hearing, heard arguments and evaluated evidence on the issue of attorneys' fees and expenses. The trial court determined that under the contracts, Dynasty, Radco and Stewart owed Commercial Resources $215,086.16 in reasonable attorneys' fees and expenses.

¶88. This Court reviews the trial court's decision to bifurcate a trial under an abuse of

42

discretion standard of review. *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1132 (Miss. 1995). The award of attorneys' fees also is reviewed under an abuse of discretion standard of review. *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002) (citing *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999)).

¶89. We first address Dynasty and Radco's argument that the issue of attorneys' fees had been abandoned by Commercial Resources' failure to obtain a ruling prior to trial on its motion to bifurcate. Dynasty and Radco rely on Uniform Civil Rule of Circuit and County Court Practice 2.04, which states:

> It is the duty of the movant, when a motion or other pleading is filed . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of the trial in the discretion of the court.

UCRCCC 2.04. Commercial Resources argues that there has been no waiver of this issue and maintains that it is entitled to the attorneys' fees.

¶90. Per Rule 2.04, allowing Commercial Resources to bring its post-trial motion on the issue of attorneys' fees was within the discretion of the trial court. The issue of abandonment was brought before the trial judge at the hearing, and the trial court, obviously, determined that it was within his discretion to consider attorneys' fees. The motion to bifurcate was necessarily granted after trial. Under the discretionary authority of Rule 2.04, we find no error.

¶91. Dynasty and Radco also argue that the award of attorneys' fees should have been

43

decided by the jury not the judge. Dynasty and Radco present multiple cases to support their argument that the jury should have decided the issue of attorneys' fees. They are all inapplicable. Dynasty and Radco cite **Roop v. Southern Pharmaceuticals Corp.**, 188 So. 3d 1179, 1191-92 (Miss. 2016), for the statement in the conclusion of the opinion: "[w]e also remand this case to the circuit court, to (1) empanel a new jury and hold an evidentiary hearing to determine whether punitive damages may be considered, and (2) for consideration of Roop's entitlement to attorneys' fees under the parties employment contract." Dynasty and Radco contend that this statement shows that the jury was to award attorneys' fees. We disagree with this interpretation of the Court's statement and find that the structure of sentence shows that the case was remanded to the circuit court to "(1) empanel a jury" for a determination on punitive damages and to the circuit court "(2) for consideration of Roop's entitlement to attorneys' fees[.]" **Id.** at 1191. It was the circuit court, not the jury, that would consider attorneys' fees.

¶92. Dynasty and Radco also cite **A & F Properties, LLC v. Lake Caroline, Inc.**,775 So. 2d 1276, 1284 (Miss. 2004) (emphasis added), for the following statement by the Court: "[h]ere the proper judgment based on the evidence that the parties *without objection* presented and considered by the jury on the instructions that the court *without appellate objection* granted, was for no attorneys fees." Dynasty and Radco contend that the "Court never at any point in the opinion suggested that the jury should not have been the entity which decided the contractual attorney's fees in question."

44

¶93. Again, this argument is without merit. Whether this Court addressed the appropriateness of the jury's determination of attorneys' fees in *A & F Properties* is not relevant to whether the trial court in this case abused his discretion by bifurcating the trial and considering attorneys' fees. Furthermore, the Court in *A&F Properties* specifically noted that neither party had objected to the consideration of the issue by the jury. *Id.* "It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court[.]" *Cook*, 832 So. 2d at 486 (quoting *Mauck*, 741 So. 2d at 269). The trial judge did not abuse his discretion by considering and deciding the issue of attorneys' fees.

¶94. "Absent some statutory authority or contractual provision, attorneys' fees cannot be awarded unless punitive damages are also proper." *Id.* (citing *Aetna Cas. & Sur. Co. v. Steele*, 373 So. 2d 797, 801 (Miss. 1979)). In this case, attorneys' fees were awarded based on the contractual provisions of the Accounts Receivable Line of Credit agreement. The trial court reasoned that Radco and Stewart were found liable for the debt to Commercial Resources and were thus responsible for attorneys' fees as provided in the agreement. The trial court further reasoned that the jury had found Dynasty liable for the Commercial Resources debt owed by Stewart and Radco, thus "attorney's fees and costs of collection are a part of the debt and contractual liabilities" making Dynasty also responsible for the attorneys' fees.

¶95. Dynasty challenges this finding by arguing that there is no legal basis for attorneys'

fees against Dynasty. For all the reasons already discussed as to why Dynasty can be held liable for the debt, we find that the trial court did not abuse its discretion by awarding attorneys' fees against Dynasty as well as Radco and Stewart.

¶96. The trial court correctly reasoned that the attorneys' fees were a part of the debt owed under the contract by Dynasty, Radco and Stewart. The parties do not challenge the trial court's decision on the actual amount of the fees or considerations under the *McKee* factors. *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982). This issue is without merit.

## CONCLUSION

¶97. This Court finds that the circuit court committed no error. Dynasty and Radco's arguments are without merit. Stewart's arguments are without merit. The judgments against Stewart, Radco and Dynasty are affirmed.

¶98. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, P.J.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶99. Because I agree that no reversible error occurred, I concur with the majority. But I write specifically to address Issue I—the trial court's grant of Commercial Resources' partial summary judgment.

¶100. As to the trial court's partial-summary-judgment grant, it appears Dynasty and Radco,

on one hand, and Commercial Resources, on the other hand, are both right. The trial court should not have granted a blanket ruling against all of Dynasty and Radco's affirmative defenses. That said, Dynasty and Radco have not shown the trial court's grant of partial summary judgment prejudiced them at trial. So the grant of partial summary judgment, while error, was not reversible error.

## I.     *Horton* **does not apply to "all" affirmative defenses.**

¶101. The application of the waiver doctrine from *MS Credit Center, Inc. v. Horton*, 926 So. 3d 167 (Miss. 2006), is a discretionary decision entitled to deference. *Hinton v. Sportsman's Guide, Inc.*, 285 So. 3d 142, 150 (Miss. 2019) (citing *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 421 (Miss. 2010), *overruled on other grounds by GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464, 468 (Miss. 2021)). Still, even under this deferential standard, I agree with Dynasty and Radco that the trial court erred by granting a blanket ruling that all affirmative defenses or other rights, which if timely pursued could serve to terminate the litigation, were waived by active participation in the litigation.

¶102. The order granting partial summary judgment deemed waived "any pled affirmative defenses or other affirmative matters or rights which would serve to terminate the litigation." The reason cited was because in the twenty-one months after filing their answers, Dynasty and Radco did not pursue or advance "any affirmative defenses or other matter or right which would serve to terminate the litigation." At first blush, this order appears in line with *Horton*. In that case, we held that "[a] defendant's failure to timely and reasonably raise and

47

pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." ***Horton***, 926 So. 2d at 180 (footnote omitted). But in ***Horton*** and in cases that have applied ***Horton***, a specific affirmative defense or affirmative right was deemed waived based on the particular defense and the circumstances surrounding the delay. We have never applied ***Horton*** as a blanket waiver of all affirmative defenses asserted in a pleading because of active participation in litigation.

¶103. In other words, ***Horton*** has been narrowly focused—like a rifle aimed precisely at a definitive affirmative defense that would have terminated the litigation had it been timely pursued. It was never intended to be triggered like a shotgun, spraying a broad pattern at all pled affirmative defenses.[11]

¶104. The dissent advocates that we limit ***Horton*** to its original context—an unreasonably delayed assertion of the right to arbitrate. I disagree with the dissent's view and stand by our application of ***Horton***'s waiver principle to a "myriad of affirmative defenses." ***Woodard***

---

[11] Further, ***Horton***'s waiver principle was not intended to be used preemptively, as it was here, to gain a strategic advantage approaching trial by knocking out the opposing side's defenses. Instead, ***Horton***'s waiver principle should only arise in response to the untimely pursuit of an affirmative defense or other right that, had it been asserted earlier, would have terminated the litigation. Had that happened here and had Commercial Resources waited until Dynasty and Radco asserted certain affirmative defenses in their motions for summary judgment, the trial court would have benefitted from knowing exactly what defenses were being challenged as waived. That way the judge could and have made defense-specific rulings. We should caution the bar from making, and the bench from entertaining, scattershot preemptive summary-judgment motions like this one.

*v. Miller*, 326 So. 3d 439, 450 (Miss. 2021). This Court should be clear, however, that there are limits to **Horton**'s application. The affirmative defenses that have been deemed waived based on **Horton** have a common thread—namely, they were the type of defenses or rights that would have ended the litigation then and there.

¶105. Starting with **Horton**, the waived affirmative right was the right to arbitrate. Had the defendant timely pursued this right, the court case would have been stayed. *See* **Horton**, 926 So. 2d at 180 n.8. Instead, the defendant allowed the case to proceed in court for eight months. In other words, the defendant acted inconsistently with its right to arbitrate. Thus, it waived the right to arbitrate. *See also* **PriorityOne Bank v. Folkes**, 371 So. 3d 1284, 1288 (Miss. 2023) (similarly holding the defendant waived its right to arbitrate). The same is true for **East Mississippi State Hospital v. Adams**, 947 So. 2d 886 (Miss. 2007). There, the defense was insufficiency of process. Despite this asserted jurisdictional failure, the defendant "participated fully in the litigation of the merits for over two years without actively contesting jurisdiction in any way." So, applying **Horton**, this defense was likewise waived.

¶106. Further examples of litigation-terminating affirmative defenses and other rights that were deemed waived by unreasonable delay and active participation in the litigation include sovereign immunity under the Mississippi Tort Claims Act, **Estate of Grimes ex rel. Grimes v. Warrington**, 982 So. 2d 365, 370 (Miss. 2008); the running of the statute of limitations, **West v. West**, 371 So. 3d 145, 171 (Miss. 2023); **Spann v. Diaz**, 987 So. 2d 443, 448 (Miss. 2008); the failure to comply with statutory pleadings requirements, **Meadows v. Blake**, 36

So. 3d 1225, 1232-33 (Miss. 2010); the exclusive remedy provision of the Mississippi Workers' Compensation Act, *Hanco Corp. v. Goldman*, 178 So. 3d 709, 712-13 (Miss. 2015); and the release of any tort claims against a spouse in a divorce-settlement agreement, *Woodard*, 326 So. 3d at 450-51. The common factor in these cases is that the defense or right, if timely asserted, would have terminated the litigation.

¶107. But not all affirmative defenses will terminate litigation if pursued early in a lawsuit. Obviously, some affirmative defenses require active participation in litigation, especially discovery, to gather evidence to prove those defenses. So the party that asserts the defense at the pleadings stage cannot be said to have waived the defense by participating in discovery. That is why no waiver occurred in *Hinton*, 285 So. 3d at 150-51. In that case, the affirmative defense in question was statutory immunity as an innocent seller. *Id.* at 149-150. Because application of that defense was "a fact-intensive inquiry requiring discovery," we found "the Sportsman's Guide should not be held to have waived this immunity because it waited until discovery was completed to seek summary judgment." *Id.* at 151. Moreover, should discovery reveal disputed material facts surrounding an affirmative defense, the question of whether the affirmative defense applies is not susceptible to summary judgment. *E.g.*, *Lovett v. Anderson*, 573 So. 2d 758, 760 (Miss. 1990) (finding a genuine issue of material fact existed about the affirmative defense of set-off thus precluding summary judgment). So the party pursuing that defense cannot have waived the defense by not filing a motion for summary judgment. In these scenarios, *Horton* simply does not apply.

¶108. Here, the partial-summary-judgment order did not specify which defenses were actually being deemed waived. While the trial court's order limited the waiver of affirmative defenses to those that would terminate the litigation, one cannot tell from the order which of the litany of asserted affirmative defenses fell into that category. But what is clear is that Commercial Resources took the position that all affirmative defenses had been waived. At almost every turn—following the trial court's partial-summary-judgment order—Commercial Resources insisted that all affirmative defenses had been deemed waived. Such an interpretation goes against *Horton* and its later application. We have never held that *Horton* applies to all affirmative defenses not pursued in a ruling pretrial. Thus, to the extent the trial court's order implicated all affirmative defenses had been waived, such a blanket ruling was error.

## II. Dynasty and Radco have failed to show prejudice.

¶109. That said, I also agree with Commercial Resources that Dynasty and Radco have not shown any reversible error. Simply put, Dynasty and Radco have not articulated on appeal which affirmative defenses they should have been allowed to present. Nor have they shown what evidence they would have presented to the jury, but for the partial-summary-judgment ruling—let alone how that evidence would have likely led to a different outcome. Instead, Dynasty and Radco take the same blanket approach in their appeal as Commercial Resources took in its partial-summary-judgment motion. They broadly assert they were prejudiced by the partial-summary-judgment ruling because "the jury was not allowed to hear and consider

51

numerous defenses and the evidence to support those defenses." But they never specify what defenses and what evidence was kept out.

¶110.  Though we review the partial grant of summary judgment de novo, we are doing so after this case went to trial and the jury rendered its verdict.[12]  This verdict must be given great weight.  *Busick v. St. John*, 856 So. 2d 304, 308 (Miss. 2003).  "No trial is free of error[.]"  *Id.*  For this reason, for an error "to require reversal[,] the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced."  *Id.* (citing *Davis v. Singing River Elec. Power Ass'n*, 501 So. 2d 1128, 1131 (Miss. 1987); *Parmes v. Ill. Cent. Gulf R.R.*, 440 So. 2d 261, 268 (Miss. 1983)).  Here, Dynasty and Radco have failed to show they were prejudiced by the trial court's partial-summary-judgment ruling and Commercial Resources' insistence of broad application of that ruling to "all affirmative defenses."  Therefore, I agree with the majority that this verdict should be affirmed.

**RANDOLPH, C.J., CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ., JOIN THIS OPINION.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENT IN PART:**

I.      *Whether the trial court erred by granting Commercial Resources' motion for partial summary judgment.*

¶111.  The trial court granted a partial summary judgment as to "any pled affirmative defenses or other affirmative matters or rights which would serve to terminate the litigation."

---

[12] Dynasty and Radco did not seek permission to file an interlocutory appeal of the trial court's grant of partial summary judgment.

Thus, the trial court granted a blanket partial summary judgment that found all affirmative defenses to be waived. The trial court reasoned:

> as of the filing of the Plaintiff's Motion for Partial Summary Judgment, twenty-one and a quarter months and nineteen and a half months after the Defendants filing of their Answers and Affirmative Defenses, this court has found no indication of the pursuit or advancement by the Defendants of any affirmative defenses or other matter or right which would serve to terminate the litigation. In addition, during that period of time, the Defendants have actively participated in the litigation by filing counterclaims and third-party complaints; filing motions, propounding discovery, answering discovery, designating witnesses, and entering scheduling orders.

The trial court relied on this Court's broad ruling in *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006). The majority now affirms the grant of this partial summary judgment for the same reasons.

¶112. I respectfully disagree and dissent. In *Woodard v. Miller*, 326 So. 3d 439, 451-59 (Miss. 2021) (Griffis, J., dissenting), I thoroughly explained the reasons to reject applying *Horton* beyond the affirmative defense of arbitration. The essence of my analysis was and still is that

> the Mississippi Rules of Civil Procedure do not anticipate or require early judicial intervention in civil cases. Instead, our Rules contemplate that all claims and defenses will be considered and resolved at trial. The Mississippi Rules of Civil Procedure do not provide the authority for the trial judge or this Court to decide that [a defendant] waived his affirmative defense of release and waiver.

*Id.* at 459 (footnote omitted).

¶113. The Mississippi Rules of Civil Procedure simply do not support this Court's expansion of *Horton* to the adjudication of affirmative defenses other than arbitration.

53

Dynasty and Radco are absolutely correct that the trial court is not authorized to dispose of affirmative defenses in a blanket ruling. Maj. Op. ¶ 25. Yet the majority rejects Dynasty and Radco's argument "that the trial court should have made specific rulings on each defense." *Id.* This is exactly what the Mississippi Rules of Civil Procedure expect as the proper procedural vehicle for a plaintiff to challenge a defendant's affirmative defenses.

¶114. I recognize that a plaintiff may be frustrated to receive an answer that includes every possible affirmative defense. Indeed, defense counsel should only assert affirmative defenses that are relevant and applicable to the case. Nevertheless, defense counsel often act on the urge to assert every listed and possible affirmative defense and matter of avoidance, i.e., "everything but the kitchen sink," due to a concern that otherwise they may waive a valid defense. Here, Dynasty and Radco did exactly what the Mississippi Rules of Civil Procedure expect of a defendant—assert your affirmative defense or lose it. *See* M.R.C.P. 8(c); M.R.C.P. 8(c) advisory comm. n.

¶115. In *Woodard*, I challenged the majority to identify the authority in the Mississippi Rules of Civil Procedure that obligates a defendant to "timely and properly" raise an affirmative defense after it is asserted as required by Rule 8(c). *Woodard*, 326 So. 3d at 458. The majority in *Woodard* did not, and the majority here cannot either. A defendant simply does not have that obligation except for the fact that we said so in *Horton*.

¶116. Therefore, I respectfully disagree with and dissent from the majority's decision to affirm the trial court's grant of partial summary judgment as to Dynasty and Radco's

54

affirmative defenses under **Horton**. Dynasty and Radco are absolutely correct that the trial court should consider each of their affirmative defenses separately. The proper resolution of this appeal would be to reverse the blanket partial summary judgment as to all affirmative defenses and to remand the case for the trial court to consider each affirmative defenses asserted by Dynasty and Radco. This may be done either through a proper Rule 56 summary-judgment motion or at trial.

> VIII. *Whether the trial court erred by granting Commercial Resources' motion to bifurcate and awarding attorneys' fees.*

¶117. I concur with the majority's decision as to this issue. I write separately, however, simply to point out the sense of confusion as to how a proper award of attorneys' fees is to be made after our recent decision in **United Services Automobile Ass'n v. Estate of Sylvia F. Minor**, 2023-CA-00049-SCT, 2024 WL 4985302 (Miss. Dec. 5, 2024).[13] There, this Court, with no analysis or authority, affirmed a jury's award of attorneys' fees as extra-contractual damages, reversed the trial judge's decision not to award attorneys' fees along with a punitive damages award, and somehow rendered $4,500,000 in attorneys' fees with no admissible evidence of attorneys' fees and no reasonableness determination under Rule 1.5 of the Mississippi Rules of Professional Conduct.

¶118. This case appears to be an opportunity to clarify the proper procedure for the consideration and award of attorneys' fees.

**COLEMAN, P.J., JOINS THIS OPINION.**

---

[13] A motion for rehearing is currently pending. As a result, the mandate has not issued.